(No. 63627—

SARAH E. HALL, Conservator of the Estate and Person of Paul A. Hall, v. ARCHER-DANIELS-MIDLAND COMPANY, Appellant (Mid-States General & Mechanical Contracting Corporation *et al.*, Appellees).

*Opinion filed May 18, 1988.*

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, James K. Horstman, Edward J. Murphy and C. Barry Montgomery, of counsel), for appellant Archer-Daniels-Midland Company.

Holley, Keith & Mehlick, of Springfield (Grady E. Holley, of counsel), for appellee Mid-States General and Mechanical Contracting Corporation.

Heyl, Royster, Voelker & Allen, of Springfield (Frederick P. Velde, of counsel), for appellee Corrigan Company.

JUSTICE MILLER delivered the opinion of the court:

Paul A. Hall sustained serious injuries on July 22, 1981, when he fell through an opening in a catwalk at the site of a construction project of the Archer-Daniels-Midland Corporation (ADM) in Decatur. In an action filed in the circuit court of Sangamon County, plaintiff Sarah E. Hall, as conservator of the estate and person of Paul A. Hall, sought recovery for Paul's injuries under the Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, pars. 60 through 69). Named as defendants in the action were ADM and the company that had erected the catwalk, Mid-States General and Mechanical Contracting Corporation (Mid-States). The plaintiff later added a third count to her complaint, in which she alleged willful and wanton misconduct by ADM and requested an award of punitive damages. ADM filed a counterclaim against Mid-States and a third-party complaint against Hall's employer, Corrigan Company (Corrigan), for contribution under "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1983, ch. 70, pars. 301 through 305) (the Contribution Act), alleging violations by those parties of the Structural Work Act. The plaintiff and ADM eventually entered into a settlement agreement. Under that agreement, the plaintiff executed a release of all parties in exchange for a lump-sum payment of $1,500,000 by ADM together with indemnification by ADM for any lien claim by Corrigan

for workers' compensation payments. The trial judge approved the settlement and dismissed the plaintiff's complaint with prejudice.

ADM pursued its contribution actions against Mid-States and Corrigan. The matter was tried before a jury, which found in favor of ADM and against both contribution defendants. The jury determined the parties' shares of contribution in the following proportions: ADM, 12%; Mid-States, 48%; Corrigan, 40%. On motion for entry of judgment, ADM submitted information showing that the amount of Corrigan's workers' compensation payments to Hall was $143,728, which made the total cost of the settlement $1,643,728. Accordingly, the trial judge entered judgment in ADM's favor against Mid-States for $788,989, or 48% of the total amount, and against Corrigan for $657,491, or 40% of the total amount.

Corrigan and Mid-States appealed. The appellate court reversed the judgment and remanded the cause for further proceedings. (142 Ill. App. 3d 200.) Although the appellate court rejected a number of challenges made by Corrigan and Mid-States to the contribution judgment, the court agreed with those parties that ADM, having settled the plaintiff's action, was required by section 2(e) of the Contribution Act (Ill. Rev. Stat. 1983, ch. 70, par. 302(e)) to extinguish all liability of Corrigan, including that for workers' compensation benefits, before bringing an action for contribution against Corrigan. The appellate court believed that ADM had failed to satisfy that requirement of the Contribution Act. The appellate court reversed the circuit court's judgment against Corrigan and, to maintain consistency in verdicts, reversed the judgment against Mid-States as well. We allowed ADM's petition for leave to appeal. See 107 Ill. 2d R. 315(a).

The release executed by the plaintiff provided:

"The undersigned, Sarah E. Hall, Conservator of the Estate and Person of Paul A. Hall, an incompetent, in consideration of:

1. A payment of One Million, Five Hundred Thousand Dollars ($1,500,000.00) and

2. An agreement by Archer Daniels Midland Company to indemnify and hold harmless Sarah E. Hall, Conservator of the Estate and Person of Paul A. Hall, and her attorneys from all claims upon the above-mentioned cash settlement which are held by, may be held by, or which hereafter may be asserted by Corrigan Company or its insurers with respect to any lien arising from worker's compensation benefits paid to the said conservator or her ward

hereby releases and forever discharges Archer Daniels Midland Company, Mid-States General and Mechanical Contracting Corporation, [and] Corrigan Company, *** from any and all claims, *** which the undersigned or her ward now has or which may in the future accrue ***.

It is further agreed by the undersigned that this document is specifically intended to release the above-mentioned parties, especially including Corrigan Company and its insurers, from all liability for any future payments to Paul A. Hall, his estate, or his personal representative for benefits which may hereafter accrue under the Illinois Workers' Compensation Act.

It is further understood that the above-stated consideration shall be paid on behalf of Archer Daniels Midland Company and its insurers and that Archer Daniels Midland Company intends to retain and pursue its rights of contribution and indemnity against Mid-States General and Mechanical Contracting Corporation and Corrigan Company (and their insurers) as well as any and all other persons, corporations or other entities released from liability to the undersigned pursuant to this instrument.

It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim and that the payment made is not to be construed as an admission of liability on the part of Archer Daniels Midland Company by whom liability is expressly denied, and that

Archer Daniels Midland Company intends merely to avoid litigation with the undersigned and to preserve its rights to contribution and indemnity against Corrigan Company and Mid-States General and Mechanical Contracting Corporation.

\* \* \*

The undersigned further agrees to execute whatever documents are necessary to secure dismissal and satisfaction of the proceedings pending before the Illinois Industrial Commission (Case No. 81 WC 83778)."

Section 2(e) of the Contribution Act provides, "A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." (Ill. Rev. Stat. 1983, ch. 70, par. 302(e).) As we have said, the appellate court construed section 2(e) to mean that ADM, as a settling tortfeasor, could not bring a contribution action against Corrigan without first extinguishing all of Corrigan's liability to the plaintiff, including Corrigan's liability for workers' compensation benefits. In reaching that conclusion, the appellate court rejected ADM's argument that workers' compensation liability is not "liability in tort" as envisioned by the Contribution Act. Relying on this court's statement in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 14, that "the Contribution Act focuses, as it was intended to do, on the culpability of the parties rather than on the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for his loss," the appellate court reasoned that an employer's liability under the Workers' Compensation Act must also be extinguished before a settling tortfeasor may seek contribution from the employer. In holding that employer Corrigan's liability had not been extinguished here, the appellate court pointed to the provision in the release requiring the plaintiff to "execute whatever documents are necessary to secure dismissal and satisfaction of the proceedings

pending before the Illinois Industrial Commission." The court noted that nothing in the record indicated that the plaintiff had taken those steps. Moreover, the court observed that the release could not itself effect a dismissal and satisfaction of the workers' compensation proceedings: waiver of benefits under the Workers' Compensation Act requires the approval of the Industrial Commission (Ill. Rev. Stat. 1983, ch. 48, par. 138.23), and approval is discretionary with the Commission (*People ex rel. PPG Industries, Inc. v. Schneiderman* (1980), 92 Ill. App. 3d 546).

We agree with ADM that it was not required, as a settling tortfeasor, to extinguish Corrigan's workers' compensation liability to Paul Hall before bringing an action for contribution against employer Corrigan. Such a requirement is clearly inconsistent with this court's previous interpretations of the Contribution Act. The language and purpose of the Contribution Act indicate that a settling tortfeasor's right to contribution depends only on his elimination of another tortfeasor's tort liability or culpability; the Contribution Act does not require a settling party to eliminate every obligation, such as that for workers' compensation benefits, that the contribution defendant may have to the injured plaintiff.

Section 2(a) of the Contribution Act establishes a right of contribution among two or more persons "subject to liability in tort arising out of the same injury to person or property, or the same wrongful death." (Ill. Rev. Stat. 1983, ch. 70, par. 302(a).) That right is limited to "a tortfeasor who has paid more than his pro rata share of the common liability." (Ill. Rev. Stat. 1983, ch. 70, par. 302(b).) Moreover, the Contribution Act specifies that "[t]he pro rata share of each tortfeasor shall be determined in accordance with his relative culpability." (Ill. Rev. Stat. 1983, ch. 70, par. 303.) Thus, the Contribution Act consistently uses the terms "tort" and "tortfeasor"

in conjunction with references to "liability" and "culpability," and that indicates to us that the legislature intended to include within the scope of the statute only liability derived from negligent or otherwise culpable conduct. In contrast, the obligation imposed on an employer by the Workers' Compensation Act is based on status alone, and it arises without regard to the existence of tortious conduct on the part of the employer. (See *J. L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 112.) In this case, the release executed by the plaintiff clearly extinguished Corrigan's tort liability, and ADM therefore was free to bring the present action against employer Corrigan under the Contribution Act.

In *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, this court considered the question whether an action may be brought under the Contribution Act against the employer of an injured party. *Doyle* rejected the argument that the employer's immunity from suit by the injured employee must also preclude a third party's action against the employer for contribution. The court noted that an employer's statutory immunity from an employee's tort action is an affirmative defense and may be waived by the employer. Therefore, "[t]he potential for tort liability exists until the defense is established." (*Doyle*, 101 Ill. 2d at 10-11.) Because a party's "liability in tort" is determined, for purposes of the Contribution Act, at the time of injury (see *Stephens v. McBride* (1983), 97 Ill. 2d 515, 520), *Doyle* accordingly held that an employer is a party "subject to liability in tort" and therefore one within the scope of the Contribution Act. The statement in *Doyle*, relied on by the appellate court here, that "the Contribution Act focuses, as it was intended to do, on the culpability of the parties rather than on the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him

for his loss," simply highlighted the circumstance, present in that case, that a tortfeasor's liability rendering him subject to contribution may arise from a breach of a statutory duty—there, the Road Construction Injuries Act—as well as from a breach of a duty at common law. *Doyle*, 101 Ill. 2d at 14.

In concluding that contribution was unavailable in this case because ADM had failed to extinguish the workers' compensation liability of employer Corrigan, the appellate court's attention seems to have been drawn to the provision in the release requiring the plaintiff to "execute whatever documents are necessary to secure dismissal and satisfaction of the proceedings before the Illinois Industrial Commission." ADM explains here that the purpose of that undertaking was to eliminate the redundant transfers of funds among the plaintiff, Corrigan, and ADM; it will be recalled that ADM agreed to indemnify the plaintiff for the amount of any lien asserted by the employer. We do not intend to interpret here the operation of that provision of the release; whatever its effect, it did not impose on ADM an additional requirement for maintaining an action under the Contribution Act.

In reversing the contribution judgment here, the appellate court seemed to find an additional, independent defect in the settlement agreement, apart from the parties' failure to extinguish Corrigan's workers' compensation liability. The appellate court noted the provision in section 5(b) of the Workers' Compensation Act that says:

"No release or settlement of claim for damages *** shall be valid without the written consent of both employer and employee or his personal representative, except in the case of the employers, such consent is not required where the employer has been fully indemnified or protected by Court order." (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b).)

The appellate court observed that employer Corrigan had not consented to the settlement, and the appellate court believed that there was no order in the record here that could "be interpreted as fully indemnifying and protecting Corrigan." (142 Ill. App. 3d at 211.) Therefore, the appellate court concluded that the release was invalid with respect to Corrigan.

No objection on this ground was made by Corrigan in the trial court, however, and therefore we do not believe that it was an issue properly before the appellate court. After the plaintiff's claims against ADM were settled, Corrigan could have moved for dismissal of ADM's third-party contribution action on the ground relied on by the appellate court. Corrigan did not raise the issue. Moreover, it appears that the protection contemplated by the appellate court would now be unnecessary. With respect to those workers' compensation benefits already paid by Corrigan to the injured employee, Corrigan would be protected in this case by ADM's promise in the release to indemnify the plaintiff for any lien claim by the employer. Moreover, because the judgment against Corrigan in the contribution action was greater than the amount of the past workers' compensation benefits, Corrigan would have been able to withhold from the judgment an amount equal to its claimed lien. And with respect to future compensation payments up to the amount of the settlement, assuming there are any, the decision in *Freer v. Hysan Corp.* (1985), 108 Ill. 2d 421, would afford Corrigan protection. In *Freer* we held that an employer may withhold compensation payments until the amount of the judgment recovered by an employee in a tort action has been exhausted. By allowing an employer to offset its compensation payments in that manner, *Freer* provides a method by which an employer may automatically preserve its lien.

Two additional issues have been raised in this appeal by one or both of the contribution defendants, and we now turn to those questions. (See 107 Ill. 2d R. 318(a).) In the amended complaint, the plaintiff sought recovery from ADM for both compensatory and punitive damages. Corrigan and Mid-States argue that the failure of the settling parties, the plaintiff and ADM, to make any allocation in the settlement between the claim for compensatory damages and the claim for punitive damages should now preclude ADM from maintaining an action for contribution. Corrigan and Mid-States contend that punitive damages may not be the subject of contribution (*Batteast v. St. Bernard's Hospital* (1985), 134 Ill. App. 3d 843; see *Farwell v. Becker* (1889), 129 Ill. 261), but it must be assumed, they argue, that some part of the settlement supplied consideration for the release of the plaintiff's punitive damages claim. For those reasons, Corrigan and Mid-States believe that the failure of the settling parties to allocate a specific part of the settlement to the claim made for compensatory damages, for which contribution would be allowed, makes it impossible to determine the amount that ADM has paid in excess of its pro rata share of the common liability. See Ill. Rev. Stat. 1983, ch. 70, par. 302(b).

In support of this argument the contribution defendants rely primarily on *Houser v. Witt* (1982), 111 Ill. App. 3d 123. In that case, Judith and Dennis Houser were injured when their van collided with a tractor being operated by Witt. The Housers jointly settled their separate personal injury claims against Witt for one unallocated sum. Witt then filed a counterclaim against Dennis, as ·driver of the Houser vehicle, seeking contribution for that part of the settlement attributable to Judith's claim. The trial court directed a verdict against Witt on the contribution claim. The appellate court affirmed, holding that the parties' failure to allocate the

settlement proceeds between Dennis' and Judith's claims meant that Witt could not establish the amount of Judith's claim and, as a result, could not show what amount he had paid in excess of his proportionate share of her claim. That result obtained even though it appeared that Witt in fact had paid an amount greater than his share of the common liability, given the jury's finding, made on Dennis Houser's claim for property damage to the van, that Dennis was responsible for 60% of the combined negligence.

*Houser* illustrates the general proposition that "one seeking contribution must be able to establish the amount to which he is entitled." (*Houser*, 111 Ill. App. 3d at 127; see *Cunningham v. Lawrence* (1959), 16 Ill. 2d 201.) As the appellate court noted here, *Houser* involved separate claims for injuries to two persons, and the settlement agreement in that case did not allocate the proceeds between the two. In the present case, there was but a single injury to be compensated, notwithstanding the plaintiff's assertion of two distinct theories of recovery. In contrast to the contribution plaintiff in *Houser*, ADM established the total amount of all its liability to the plaintiff for the injuries sustained.

Corrigan and Mid-States contend, however, that the release should have specified separate amounts for the settlement of the plaintiff's two claims against ADM, for ADM was entitled to obtain contribution only with respect to its payment of compensatory damages. In the absence of an allocation, Corrigan and Mid-States believe that *Houser*'s reasoning should preclude ADM's recovery of contribution.

The Contribution Act does not expressly require an allocation of settlement proceeds between alternative theories of recovery asserted by a plaintiff against a defendant. We note that there would have been no incentive for ADM to allocate any part of the settlement to

the punitive damages claim, for that amount would not have been subject to contribution. Nor would the plaintiff have had an incentive to allocate any amount to the punitive damages claim, for unlike compensatory damages, punitive damages are subject to the Federal income tax. (See *Klawonn v. Mitchell* (1985), 105 Ill. 2d 450, 453; 34 Am. Jur. 2d *Federal Taxation* §5334 (1987).) Whether a tortfeasor, by settling with the plaintiff, is unfairly attempting to pass on punitive damages for which he would not otherwise be able to obtain contribution goes to the question whether the settlement was made in good faith. The record in this case contains an indication that the value of the plaintiff's claim for compensatory damages, as measured by the potential recovery under the Workers' Compensation Act, equaled or exceeded the settlement amount. Moreover, the jury's assessment of only 12% of the common liability against ADM suggests to us the doubtful basis for any claim of willful or wanton misconduct on ADM's part. In the trial court proceedings in this case, both Corrigan and Mid-States moved for dismissal of ADM's contribution actions on the ground that the settlement failed to make any allocation between the plaintiff's two separate claims against ADM. Corrigan and Mid-States did not attempt to challenge the good faith of the settlement, however, or to present the issue for resolution by either the judge or jury.

As a related ground for reversing the contribution judgment, employer Corrigan also argues that ADM failed to present a *prima facie* case for contribution. Specifically, Corrigan complains that ADM failed to show that the amount of the settlement was reasonable and made in good faith, and that ADM therefore did not establish that it paid more than its *pro rata* share of the common liability. For those reasons, Corrigan believes that the evidence presented at trial failed to demon-

strate that the damages were not based on speculation, hypothesis, or conjecture. See *Posner v. Davis* (1979), 76 Ill. App. 3d 638.

It is evident here that the settlement reached by ADM and the plaintiff was in good faith and was reasonable, and that ADM paid more than its proportionate share of the common liability. In settling with the plaintiff and extinguishing the potential tort liability of the others, ADM undertook the collective liability of the parties for the injuries at issue here, subject only to whatever success it might later have in its contribution actions against Mid-States and Corrigan. That circumstance would give rise to a presumption of good faith on the part of a contribution plaintiff who has settled the underlying tort action. Whether ADM paid an amount in excess of its *pro rata* share of the common liability was the point decided by the jury in the trial of ADM's contribution claims, assuming that the amount of the settlement was appropriate. And as we have already indicated, the amount of the settlement was reasonable, in light of Hall's injuries, and Corrigan and Mid-States did not attempt in the trial court to contradict the reasonableness or good faith of the settlement.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*