PATRICK J. MALLANEY *et al.*, Plaintiffs, v. JAMES R. DUNAWAY, Defendant and Third–Party Plaintiff-Appellant (Margaret Dunaway, Mother and Next Friend of James R. Dunaway, Defendant and Third-Party Plaintiff; Patrick J. Mallaney, Third–Party Defendant-Appellee).

Third District   No. 3—87—0554

Opinion filed December 22, 1988.

828

HEIPLE, J., dissenting.

.

Dunn & Martin, Ltd., of Joliet (Randal J. Miller, of counsel), for appellant.

J. Dennis Marek, of Ackman, Marek, Boyd & Simutis, of Kankakee (Robert W. Boyd, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

The issue on appeal arises out of a third-party contribution claim filed by James Dunaway against Patrick Mallaney. Dunaway and Mallaney were operators of a car and a motorcycle, respectively, which collided at an intersection in Kankakee in October 1983. Mallaney and Sandra Horton, a passenger on Mallaney's motorcycle, sustained injuries as a result of the accident and filed suit against Dunaway, claiming damages as a result of his negligence. Horton chose not to sue Mallaney. Dunaway then filed his counterclaim against Mallaney for contribution. Prior to trial, Horton settled with Dunaway for $98,500 and released Dunaway, his mother and their insurance company as well as Mallaney and his insurer from any and all claims arising out of the accident. The release further recites that "part of the consideration for this settlement *** is to preserve any claim or cause of action for contribution that James R. Dunaway, Margaret Dunaway and [their insurer], Economy Fire and Casualty Company, may have against Patrick J. Mallaney and Country Mutual Insurance Company, his insurer." A separate settlement was reached between Mallaney and Dunaway and Economy Fire and Casualty in which Mallaney accepted $10,000 for his injuries.

Prior to trial on the contribution action, Dunaway filed a motion *in limine* setting forth the procedural context of the suit and asserting that Mallaney planned to introduce evidence to prove that Horton's damages were substantially greater than the $98,500 she had settled for. According to the motion, Mallaney's trial strategy was to establish further that Dunaway's percentage of fault was much greater than Mallaney's. If the jury believed Mallaney's evidence, then by application of the Contribution Among Joint Tortfeasors Act (Act) (Ill. Rev. Stat. 1987, ch. 70, par. 302(b)), Mallaney could minimize or even avoid paying a share of the settlement. Dunaway prayed for an order prohibiting Mallaney from introducing evidence of Horton's damages and fixing $98,500 as the "common liability" for purposes of the Act. The trial court denied Dunaway's motion, and an appeal was perfected to

this court pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308).

The issue as framed for our consideration is: Whether, assuming that a defendant can unilaterally name a third-party defendant in a release and maintain an action for contribution against the third-party defendant when he was added without knowledge, consent or agreement, the amount for which a plaintiff settles her entire cause of action and gives a full release determines the common liability to be apportioned among joint tortfeasors. The parties agree that the issue as framed appears to be one of first impression. However, they direct our attention to several Illinois decisions which could be helpful here. We have reviewed those cases and will refer to those which we find most persuasive. Before doing so, we deem it provident to set forth relevant parts of the Contribution Act. Section 2 of the Act provides:

"(a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, *** there is a right of contribution among them, even though judgment has not been entered against any or all of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability.

(c) When a release *** is given in good faith to one or more persons liable in tort arising out of the same injury ***, it does not discharge any of the other tortfeasors from liability for the injury *** unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release *** or in the amount of the consideration actually paid for it, whichever is greater." Ill. Rev. Stat. 1987, ch. 70, par. 302.

■ It is within the context of the foregoing provisions that we must determine whether the "common liability" is limited to the amount the injured party has settled her entire cause of action for—in this case, the $98,500 settlement received from Dunaway—or whether Mallaney as a third-party defendant is entitled to establish in the trial of the contribution action that the injured party's damages exceeded that amount. Black's Law Dictionary 249 (5th ed. 1979) defines "common" as "[b]elonging or shared equally by more than one." Among the definitions provided for "liability" are "condition of being actually or potentially subject to an obligation" and "that which one is under obli-

gation to pay, or for which one is liable." (Black's Law Dictionary 823 (5th ed. 1979).) The parties do not dispute the concept of "common." Their arguments seem to focus on the concept of "liability."

In *U.S. Home Corp. v. George W. Kennedy Construction Co.* (N.D. Ill. 1985), 617 F. Supp. 893, the Federal district court observed that the sensible reading of the phrase "subject to liability in tort," as it appears in subsection (a) of the Act, connotes liability to the injured party. Likewise, it would appear that a sensible reading of the phrase "common liability" must connote that obligation was owed by the joint tortfeasors *to the injured party.*

Mallaney seeks to attack the settlement amount in this case by appealing to the jury's sense of fairness and thereby establishing that Dunaway has not paid more than his *pro rata* share of the "common liability." However, Mallaney expressly denies that he is challenging the "good faith" of the settlement. Obviously, third-party defendant Mallaney is not willing to litigate the question of Horton's damages for her benefit. In fact, the phantom dollar figure which Mallaney wishes to establish in the name of the "common liability" bears no true relation to the amount the tortfeasors are obligated to pay to the injured party. The settlement, on the other hand, does. By its express terms, the settlement agreement limits to $98,500 the entire obligation owing to the injured party.

Prior to oral argument in this case, our supreme court handed down its decision in *Hall v. Archer-Daniels-Midland Co.* (1988), 122 Ill. 2d 448, which lends support for the determination we reach today. In *Hall*, plaintiff Hall sustained injuries at a construction site. His estate sued Archer-Daniels-Midland Co. (ADM), and Mid-States General and Mechanical Contracting Corporation (Mid-States), the erector of a catwalk. ADM in turn sued Mid-States and Hall's employer, Corrigan Company, for contribution. Meanwhile, Hall settled all of his claims with ADM for $1,500,000 and released all parties defendant. It appears that Corrigan did not consent to the settlement; however, neither did Corrigan or Mid-States object or challenge the good faith or reasonableness of the settlement. The matter proceeded to a jury trial on the proportionate faults of Mid-States, Corrigan, and ADM. After the jury determined the parties to be at fault 48%, 40% and 12%, respectively, the trial court applied these proportions to the amount of the settlement plus workers' compensation benefits.

On appeal, several issues were pursued which are not germane to the case before us today. One which we believe is substantially similar to the argument Mallaney makes here is Corrigan's contention that the evidence admitted at the trial of the contribution action failed to

demonstrate that ADM had paid more than its *pro rata* share of the common liability. Corrigan argued that it could not be determined from the settlement whether the amount paid by ADM included punitive damages as claimed by the injured plaintiff in the main complaint. In response, the supreme court noted that the record indicated that the value of the injured plaintiff's claim for compensatory damages equaled or exceeded the settlement amount. The court stated:

"It is evident here that the settlement reached by ADM and the plaintiff was in good faith and was reasonable, and that ADM paid more than its proportionate share of the common liability. In settling with the plaintiff and extinguishing the potential tort liability of the others, ADM undertook the collective liability of the parties for the injuries at issue here, subject only to whatever success it might later have in its contribution actions against Mid-States and Corrigan. That circumstance would give rise to a presumption of good faith on the part of a contribution plaintiff who has settled the underlying tort action. Whether ADM paid an amount in excess of its *pro rata* share of the common liability was the point decided by the jury in the trial of ADM's contribution claims, *assuming that the amount of the settlement was appropriate*. And as we have already indicated, the amount of the settlement was reasonable, in light of Hall's injuries, and Corrigan and Mid-States did not attempt in the trial court to contradict the reasonableness or good faith of the settlement." (Emphasis added.) (122 Ill. 2d at 461.)

The court accordingly affirmed the circuit court's judgment. It is apparent from the foregoing that our supreme court understood the "common liability" to be that amount actually paid by the parties defendant to the injured party pursuant to a good-faith settlement in a reasonable amount in exchange for a full release.

■ Unlike *Hall*, third-party defendant Mallaney here presents absolutely no ground for either demanding or offering proof of the injured plaintiff's damages. Mallaney speculates that since Dunaway's insurance limit was $100,000 per person and Horton had elected not to sue Mallaney, she was willing to compromise her claim by settling for $98,500, despite her extensive personal injuries. This may be so, but Mallaney's position should be addressed to the court in a challenge to the good faith or reasonableness of the settlement, not to a jury in an attempt to define the limits of the "common liability" in the trial of the contribution action. See *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 478 N.E.2d 581 (holding that there is no right to a jury trial as to the issue of the good faith of a settlement).

██ The policy of the Contribution Act is to encourage compromise and settlement in the absence of bad faith, fraud or collusion. (*535 North Michigan Condominium Association v. BJF Development, Inc.* (1986), 143 Ill. App. 3d 749, 493 N.E.2d 111.) This policy is promoted by approving settlements that represent a fair compromise of the parties' interests, even though the dollar amount so given does not accurately represent the injured party's damages.

██ A settlement given in good faith may be presumed reasonable in the absence of a timely objection in the trial court. And, the mere fact that an injured party's actual damages exceed the amount of the settlement does not prove that the settlement was unreasonable. (*Hall*, 122 Ill. 2d 448.) Obviously, there are cases where the plaintiff is willing to settle for far less than the amount of actual damages sustained where factors such as plaintiff's unwillingness to sue a potential defendant, as here, plaintiff's unwillingness to go to trial, plaintiff's comparative negligence, time barring or other potential defenses merit consideration during settlement negotiations. Compromise under such circumstances is neither collusive nor fraudulent, but entirely compatible with the policy underlying the Contribution Act. Thus, to prevail on a challenge to the reasonableness of a settlement, a defendant to the contribution claim would have to establish that the difference between the settlement amount and the value of the injured plaintiff's claim for compensatory damages was substantial enough to smack of "bad faith," collusion or fraud. (See *Frangos v. Doering Equipment Corp.* (3d Cir. 1988), 860 F.2d 70), (where, in an analogous setting, the Third Circuit Federal Court of Appeals dismissed as meritless a contribution defendant's argument that a settlement's fairness and reasonableness must be established by medical testimony relating to the injured party's damages, as opposed to lawyers' testimony relating to the value of his legal claim).) Lacking such proof, the amount paid to the injured party—in this case, the $98,500 settlement—in exchange for the release of all claims against the joint tortfeasors constitutes the "common liability."

We answer the issue presented in this appeal in the affirmative and remand this cause for further proceedings.

Remanded.

SCOTT, J., concurs.

JUSTICE HEIPLE, dissenting:
The Contribution Among Joint Tortfeasors Act (the Act) provides

that a joint tortfeasor who settles with a claimant may recover from the other joint tortfeasor to the extent that he has paid more than his pro rata share of the common liability. Ill. Rev. Stat. 1987, ch. 70, par. 302.

How does this work in practice? Assume that a blameless person has been injured by two joint tortfeasors to the tune of $100. Assume further that each tortfeasor was 50% at fault. Assume further that the blameless person has settled the $100 claim in full with one of the tortfeasors. The Act permits the tortfeasor who was 50% at fault but who paid the entire claim to recover 50% ($50) from the other joint tortfeasor. The Act is plausible enough and replaced the former system where each tortfeasor was both jointly and severally liable, could be targeted for the entire loss, and had no possibility of recovery from other tortfeasors whose culpable conduct contributed to the loss.

From a sound premise, however, which was grounded in concepts of fairness and equity, new legalisms have arisen which introduce the possibilities of wholly new elements of unfairness.

Observe the instant case. One joint tortfeasor has settled and now wants to recover a claimed pro rata share of the settlement which was paid. Tortfeasor number two wants his day in court. He was not a party to the settlement and claims the right to litigate (1) whether the amount paid was correct, and (2) what extent his fault, if any, bears to the amount of total fault causing the loss.

The trial court ruled that the amount of the damages (item number one) could be litigated in the contribution proceeding. That is to say, was the amount correct? Tortfeasor number one took an interlocutory appeal to this court claiming that only the degree of culpability (item number two) could be litigated; that a "good-faith" settlement placed item number one beyond the pale. A majority of this court agrees. I respectfully but strongly dissent.

The issue here is not whether the settlement was in *good faith* or not. That is wholly beside the point. The issue is whether the settlement figure was *correct*. Perhaps the settlement figure should have been higher. Perhaps lower. Unless tortfeasor two is allowed to litigate that matter, the answer will never be known. Moreover, unless tortfeasor two is allowed to litigate that point, he will be denied his constitutional right to both procedural and substantive due process of law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.

It should be obvious that a settlement may be in "good faith" but still be light years away from the mark. Many factors impinge on settlement negotiations. For instance, there is the question of the limits of insurance coverage and the ability to pay. Large exposure will cause

an insurance company to place a higher value on a claim than if the limits were lower. If it could be assumed objectively that a claim was worth $100 and the insurance coverage was a million dollars, the insurance company might consider the potential exposure so serious as to induce a settlement for substantially more than $100, perhaps even multiples of that figure. On the other hand, if the coverage was $100, the company might offer $98.50. The claimant then would have the option of litigating to recover an additional $1.50 or to settle for 98.5% of the limits of liability. Personal injury settlements and trials always involve more unknowns than knowns. No one can say with certitude what a broken limb, a lost eye, or a disfigurement are worth. It depends. So too does liability. It depends. The variables are unlimited.

Returning to my $100 claim illustration. If the claim was, in fact, worth $200 and if tortfeasor one was 50% at fault, then, given a $100 settlement, tortfeasor two should pay nothing. That is because tortfeasor one, in such case, paid only his fair share. That is to say, tortfeasor one was 50% at fault and paid $100 on a $200 loss. That is exactly what tortfeasor one should have paid. Tortfeasor two owes him nothing.

Likewise, if the $100 claim was, in fact, only worth $10, tortfeasor one, in making a settlement for $100, has overpaid the claim by $90. He has paid 10 times what the claim was objectively worth. He may even have done so in good faith. If tortfeasor two was 50% at fault, should he be required to contribute $50 towards the settlement of a claim which was only worth $10? Certainly not. Tortfeasor two should not be required to contribute more than 50% of the fair value of the claim. That is to say, $5.

Once again, finally, and most importantly, it must be noted that the overriding principle here is that of due process of law. Strangers should not be able, by agreement or otherwise, to deprive a third party of his day in court. Accordingly, I dissent.