DENNIS DICKMAN, Plaintiff-Appellee and Cross-Appellant, v. E.I. Du PONT de NEMOURS AND COMPANY, Defendant-Appellant and Cross-Appellee.

Third District    No. 3—95—0411

Opinion filed April 2, 1996.—Rehearing denied April 29, 1996.

Robert W. Boyd (argued), of Ackman, Marek, Boyd & Simutis, of Kankakee, and Raymond M. Ripple (argued), of Wilmington, Delaware, for appellant.

Christopher W. Bohlen (argued), of Blanke, Norden, Barmann, Kramer & Bohlen, P.C., of Kankakee, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Dennis Dickman, filed a two-count complaint against the defendant, E.I. Du Pont de Nemours and Company Du Pont). Dickman sought damages for stunted corn crops. The trial court dismissed count I. Following a bench trial, the circuit court of Kankakee County entered judgment in favor of Dickman on count II in the amount of $19,904.55. Du Pont appealed from the judgment, and Dickman cross-appealed from the dismissal of count I.

In its appeal, Du Pont argues that the trial court lacked jurisdiction over Dickman's complaint because his claims were preempted by federal law. In his cross-appeal, Dickman contends that the trial court erred in dismissing count I of his complaint based upon a release he signed on September 19, 1990. Following our careful review of the record, we affirm the trial court's judgment.

## FACTS

Dickman filed his complaint against Du Pont on February 7, 1992. In count I, Dickman alleged that he purchased Canopy herbicide on March 22, 1989. Dickman said he used Canopy to control weeds on his soybean fields. The Canopy was manufactured by Du Pont and "was represented to be useable for the purpose of granting freedom to rotate from beans to corn on the following years." In 1990, he planted corn on the fields. Dickman alleged substantial damage occurred to the corn because of Canopy's "carryover" effect from the prior year. He claimed $9,588.13 in damages to his 1990 corn crop.

In count II, Dickman alleged that on May 2, 1990, he purchased Canopy. He again used the Canopy for weed control on his soybean fields. Dickman claimed $19,904.55 in damages to the corn he planted in 1991.

On May 20, 1992, Du Pont filed a motion to dismiss count I of Dickman's complaint. Du Pont contended that Dickman agreed to settle his 1990 claim. Du Pont attached a copy of a release signed by Dickman on September 19, 1990. The release stated that $400 was the settlement amount for damages to the 1990 corn crop.

In response, Dickman filed an affidavit acknowledging that he signed the release. Dickman said he did not receive the check from Du Pont until after November 12, 1990. Before Dickman received the $400 check, he calculated that his losses were far greater than that amount of money. Dickman did not cash the $400 check and returned it to Du Pont. On January 13, 1993, the trial court granted Du Pont's motion to dismiss count I of Dickman's complaint.

A bench trial on count II commenced on April 5, 1994. At the beginning of trial, Du Pont's attorney made an oral motion *in limine*. Du Pont argued that no evidence concerning the Canopy label should be admitted by the trial court. Du Pont contended that all questions concerning the label were exclusively federal questions. Du Pont claimed that the federal questions could not be decided in state court. The trial court denied the motion *in limine*, and the bench trial continued.

At trial, Dickman testified that he farms approximately 640 acres. In 1989, John Bright at the Herscher Grain Company gave Dickman two promotional brochures from Du Pont which provided information about the use and application of Canopy. Both brochures stated that Canopy "gives you the freedom to rotate from beans to corn." The brochures also said that Canopy could safely be used on Midwest soil types which had a pH level of 6.8 or lower. Bright said he received his training and instruction from Du Pont. Du Pont only sells its products through trained dealers like John Bright. Soil tests on Dick-

man's fields showed the average pH level ranged from 5.9 to 6.4. Based on these pH levels, Bright determined that Canopy was appropriate for use on Dickman's farm. As a result of the tests, Bright recommended that Dickman use Canopy.

Dickman said he decided to purchase Canopy based on Du Pont's promotional literature and Bright's recommendation. In 1989 and 1990, Dickman applied Canopy to his soybean fields. He noticed during the 1990 growing season that his corn was stunted on the fields previously treated with Canopy. James Flater, Du Pont's sales representative, inspected Dickman's corn and performed soil tests. Flater determined the cause of Dickman's problem was a high pH level. Flater said the high pH level caused the Canopy to carry over and affect the growth of the corn the following year.

However, Bright disagreed with Flater's conclusion and testified that soil tests completed in 1990 and 1991 did not indicate a high pH level on Dickman's fields. As a result, Bright remained certain that Canopy was appropriate for Dickman's farm.

Dickman testified that, in 1991, his corn was once again stunted on the fields previously treated with Canopy. His corn yield was significantly higher on the fields where Canopy had not been applied in the prior year.

On August 9, 1994, the trial court found that Canopy left Dickman's fields unfit for the planting and rotation of major crops. The court entered judgment against Du Pont in the amount of $19,904.55. Du Pont filed a motion for reconsideration and argued for the *first time* that the court lacked jurisdiction over the lawsuit because of federal preemption. The trial court denied Du Pont's motion. As a consequence, Du Pont filed a timely notice of appeal. Dickman responded by filing a cross-appeal.

## PREEMPTION

Du Pont contends the judgment must be reversed because the circuit court of Kankakee County lacked subject matter jurisdiction. Du Pont argues that Dickman's claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) (7 U.S.C.A. § 136 *et seq.* (West 1980)). Du Pont contends that the issue of FIFRA preemption is a jurisdictional matter which cannot be waived and may be raised at any time. After reviewing applicable case law, we find the issue of FIFRA preemption is *not* jurisdictional and has been waived by Du Pont.

FIFRA is a comprehensive federal statute which regulates the use, sale and labeling of pesticides (*Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 601, 115 L. Ed. 2d 532, 540, 111 S. Ct. 2476,

2479-80 (1991)) and requires the registration of all pesticides sold in the United States with the Environmental Protection Agency (EPA) (see 7 U.S.C.A. § 136a(a) (West Supp. 1995)). Under FIFRA, the definition of "pesticide" includes herbicides such as Canopy. 7 U.S.C.A. § 136(u) (West Supp. 1995). FIFRA's preemption clause states that a state "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C.A. § 136v(b) (West Supp. 1995). Based upon this section of the Act, numerous courts have concluded that FIFRA expressly preempts state common law actions against manufacturers of EPA-registered pesticides when the actions are based on claims of inadequate labeling or packaging. See, *e.g.*, *Welchert v. American Cyanamid, Inc.*, 59 F.3d 69, 72-73 (8th Cir. 1995); *Taylor Ag Industries v. Pure-Gro*, 54 F.3d 555, 560-63 (9th Cir. 1995); *MacDonald v. Monsanto Co.*, 27 F.3d 1021, 1024-25 (5th Cir. 1994); *Worm v. American Cyanamid Co.*, 5 F.3d 744, 747-49 (4th Cir. 1993); *King v. E.I. Du Pont de Nemours & Co.*, 996 F.2d 1346, 1349-51 (1st Cir. 1993); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 370-71 (7th Cir. 1993); *Papas v. Upjohn Co.*, 985 F.2d 516, 518-20 (11th Cir. 1993); *Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F.2d 1177, 1179 (10th Cir. 1993).

From these cases, Du Pont concludes that the existence of federal preemption under FIFRA means that state courts cannot exercise jurisdiction over these types of disputes. Du Pont assumes that only federal courts can hear cases which involve FIFRA preemption. However, none of the federal cases cited above hold that state courts do not have subject matter jurisdiction over causes of action preempted by FIFRA.

■ State courts are *not* deprived of jurisdiction over claims involving federal preemption *unless* Congress has given exclusive jurisdiction to a federal forum. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 537-39 (1996). Congress has not given federal courts exclusive jurisdiction over claims involving FIFRA. See *Hurt v. Dow Chemical Co.*, 963 F.2d 1142, 1144-45 (8th Cir. 1992); *Murray v. Commonwealth Edison*, 905 F. Supp. 512, 514 (N.D. Ill. 1995). In fact, absent diversity jurisdiction, federal courts cannot entertain state law claims which involve FIFRA preemption. *Hurt*, 963 F.2d at 1144-45; *Murray*, 905 F. Supp. at 514; see also *Shaw*, 994 F.2d at 366 n.1. Accordingly, state courts are not deprived of subject matter jurisdiction over these claims. See *Murray*, 905 F. Supp. at 514 (cause remanded to the circuit court of Cook County). As a result, the preemption issue is *not* jurisdictional but is subject to the traditional rules of appellate adjudication, including waiver. *Haudrich*, 169 Ill. 2d at 539.

■ The issue of FIFRA preemption is actually *a defense* to a state law claim. *Hurt*, 963 F.2d at 1145; *Murray*, 905 F. Supp. at 514; *Jillson v. Vermont Log Buildings, Inc.*, 857 F. Supp. 985, 987 (D. Mass. 1994); see also *Shaw*, 994 F.2d at 373 (Shadur, J., dissenting). Section 2—613(d) of the Code of Civil Procedure (Code) provides that an affirmative defense to a cause of action must be set forth in a party's answer or reply. 735 ILCS 5/2—613(d) (West 1994). A claim that a federal statute preempts the plaintiff's cause of action meets the test for an affirmative defense under section 2—613(d) and must be raised in the defendant's answer. *Afshar, Inc. v. Condor Air Cargo, Inc.*, 250 Ill. App. 3d 229, 231, 621 N.E.2d 126, 128 (1993). When a defendant fails to raise the issue, he has waived the defense. *Afshar, Inc.*, 250 Ill. App. 3d at 231, 621 N.E.2d at 128.

Here, Du Pont did *not* raise the issue of FIFRA preemption as an affirmative defense in its answer. In fact, Du Pont waited until after the judgment was entered before claiming the lawsuit was preempted by FIFRA. Based on our reading of applicable law, we hold that Du Pont has waived the issue of FIFRA preemption. See *Haudrich*, 169 Ill. 2d at 540.

## RELEASE

■ In his cross-appeal, Dickman contends that the trial court erred when it granted Du Pont's motion to dismiss count I. Du Pont filed its motion pursuant to section 2—619(a)(6) of the Code (735 ILCS 5/2—619(a)(6) (West 1994)) based on Dickman's release. When a defendant's section 2—619 motion to dismiss is based on a release, and the defendant shows the existence of a facially valid release, the burden of proof shifts to the plaintiff. *Roberts v. Dow Chemical Co.*, 244 Ill. App. 3d 253, 256, 614 N.E.2d 252, 254 (1993). In that situation, the plaintiff must then prove that a material issue of fact exists which would invalidate the agreement. *Roberts*, 244 Ill. App. 3d at 256, 614 N.E.2d at 254.

Dickman's affidavit does not dispute the fact that he signed the release and agreed to settle his claim. Dickman's affidavit says that he did not accept Du Pont's check after he determined his damages to be greater than $400. The law is clear that a settlement is not unreasonable merely because an injured party's actual damages exceed the settlement amount. See *Mallaney v. Dunaway*, 178 Ill. App. 3d 827, 833, 533 N.E.2d 1114, 1117 (1988).

We find that Dickman's affidavit falls far short of proving any material facts which would invalidate his agreement with Du Pont. As a result, we conclude that the trial court properly granted Du Pont's motion to dismiss count I.

782

For the reasons indicated, the judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

SLATER and MICHELA, JJ., concur.