Sixth Division
December 10, 2010

No. 1-09-1312

| | | |
|---|---|---|
| LAWDRENA ZELLERS, | ) | Appeal from the Circuit Court |
| Plaintiff, | ) | of Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| JUAN HERNANDEZ and THOMAS DAVIS, | ) | |
| Defendants | ) | |
| | ) | 06 M1 300341 |
| (Thomas Davis and GMAC Insurance Company, | ) | |
| Counterplaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | Honorable |
| Juan Hernandez, | ) | Laurence Dunford, |
| Counterdefendant-Appellant.) | ) | Judge Presiding |

JUSTICE McBRIDE delivered the opinion of the court:

Following a May 2004 vehicle accident, plaintiff Lawdrena Zellers filed a personal injury

action against defendants Juan Hernandez and Thomas Davis. Davis filed a counterclaim for

contribution against Hernandez. GMAC Insurance Company (GMAC) was added later as a

counterplaintiff. Zellers settled with Davis and GMAC, as Davis's insurer, for $17,500 and

executed a release for both defendants and the case proceeded only on the contribution

counterclaim. An arbitration award found Hernandez to be 100% negligent, but no money

damages were requested. Davis moved for a good-faith finding on the settlement and for the trial

court to enter judgment in favor of Davis and GMAC for $17,500. The trial court concluded that

a good-faith finding was unnecessary and entered judgment for Davis and GMAC for $17,500.

Hernandez appeals, arguing that: (1) the trial court erred by altering the arbitration award

to enter a money judgment on the arbitration award when no money damages had been awarded

at arbitration; and (2) the trial court erred in entering judgment on the contribution counterclaim when no finding of good faith on the settlement had been made.

On January 25, 2006, Zellers filed her two-count personal injury complaint against Hernandez and Davis. Count I alleged negligence against Hernandez and count II alleged negligence against Davis. The complaint alleged that on May 1, 2004, Zellers was operating a motor vehicle southbound on Kedzie at the intersection with Columbus in Chicago. At that time, Hernandez was driving a vehicle westbound on Columbus and Davis was driving north on Kedzie. Zellers alleged that both Hernandez and Davis were guilty of the following acts of negligence: operating a motor vehicle at an excessive rate of speed under the circumstances; failing to brake his vehicle properly; failing to keep a proper lookout; failing to keep his motor vehicle under proper control; failing to warn the plaintiff of the impending danger; failing to take proper evasive action to avoid a collision once it became imminent; and failing to yield the right of way.

Zellers alleged that as a direct and proximate result of one or more of the negligent acts or omissions of Hernandez and Davis, the vehicles operated by Hernandez and Davis collided with Zellers' vehicle. As a result of the collision, Zellers sustained injuries and paid for medical care and treatment. Zellers also experienced pain, suffering and mental anguish, temporary and permanent disability and disfigurement, in two weeks of lost wages, and property damage to her vehicle. Her medical bills were $6,800. Zellers sought $15,000, plus costs, from each defendant.

In June 2006, Davis filed a counterclaim for contribution against Hernandez. Davis alleged that Hernandez was guilty of the following acts or omissions: failing to maintain a proper and sufficient lookout; failing to exercise obedience to traffic laws; and traveling at a speed in

excess of the posted speed limits and greater than reasonable and proper under the circumstances and acting carelessly and negligently. Davis pled that if judgment was entered in favor of Zellers and against Davis, then judgment for contribution should be entered in favor of Davis and against Hernandez in proportion to the amount of fault on the part of Hernandez which proximately caused and/or contributed to Zellers' injuries or damages.

In April 2008, Zellers settled with Davis for $17,500 and executed a release of all defendants, including Hernandez. The settlement was paid by GMAC, Davis's insurer. Zellers released all liability claims, but excluded any claims for contribution that Davis has against Hernandez.

In May 2008, Davis filed an amended counterclaim for contribution. Davis, in addition to the previously pled negligent acts or omissions, alleged that Hernandez: failed to obey the instructions of an official traffic-control device; failed to stop at a clearly marked stop line or before entering the crosswalk at a "steady red indication"; failed to proceed through the intersection or past a flashing yellow signal with caution; and was otherwise careless and negligent. Davis reasserted his claim for contribution from Hernandez in proportion to the proximate cause of Zellers' injuries or damages. Subsequently, the trial court dismissed Zellers' claims against Davis and Hernandez with prejudice and the matter proceeded solely on the counterclaim for contribution. Also in May 2008, Davis filed a motion to spread of record the amount of settlement. Davis asked to provide the trial court with the amount of the settlement, $17,500, to assist in calculating the judgment in the contribution counterclaim.

On July 28, 2008, the parties proceeded to arbitration on the contribution counterclaim.

1-09-1312

The arbitrators found that all parties participated in good faith. They entered an "award for counterplaintiff, Thomas Davis, and against counterdefendant, Juan Hernandez, with finding of 100% negligence on part of Juan Hernandez." In the section for costs, the arbitration finding stated "none" and "not requested." Neither party rejected the arbitration award.

In August 2008, Davis filed a motion to add GMAC as an additional counterplaintiff, which the trial court granted. Davis and GMAC then filed a second amended counterclaim for contribution. GMAC alleged identical claims of negligent acts or omissions by Hernandez as Davis. GMAC further alleged that it paid the costs of the settlement pursuant to an automobile insurance policy, and under that policy, GMAC is the "bona fide subrogee" of Davis for his entire loss claim.

Davis filed a motion asking for judgment on the arbitration award to be entered. Hernandez objected to the motion and both parties filed briefs on the motion. Hernandez contended that Davis failed to show that the settlement with Zellers was reasonable and in good faith. Hernandez also asserted that Davis could not recover under a theory of contribution because there was no joint indebtedness, as Hernandez was found to be 100% negligent. Davis replied that Hernandez failed to reject the arbitration award and cannot challenge the finding of 100% negligence. Davis further argued that a good-faith finding was not required because Zellers settled and released all defendants and that judgment in the amount of $17,500 against Hernandez should be entered, based on the settlement and the allocation of fault by the arbitrators.

In December 2008, the judge presiding entered an order that the award of 100% negligence against Hernandez stands and "this matter will proceed to trial on the issues of

4

proximate cause and medical damages and nature and extent of Lawdrena Zellers' injuries related to this occurrence."

The case was scheduled for trial on March 18, 2009. On that date, counterplaintiffs filed a motion for a good-faith finding on the settlement award. The trial court granted counterplaintiffs leave to file an additional motion for judgment on the arbitration award entered July 28, 2008, and set a briefing schedule and a hearing date. On May 4, 2009, the trial court conducted a hearing on the motions. At the hearing on the motion, another judge stated that he did not believe a good-faith finding was necessary and declined to make a determination about the good faith of the settlement. The trial court then granted counterplaintiff's motion for judgment on the arbitration award. The court also vacated the December 5, 2008, order setting the case for trial. The court entered judgment in favor of Davis and GMAC and against Hernandez in the amount of $17,500.

This appeal followed.

On appeal, Hernandez argues that the trial court erred in awarding $17,500 in damages to the counterplaintiffs when the arbitrators failed to make a monetary award in its findings and that the trial court erred in entering judgment on the contribution counterclaim when no good-faith finding had been made as to the settlement with Zellers.

"The [Joint Tortfeasor Contribution Act (Contribution Act)] creates a statutory right of contribution in actions 'where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death' (740 ILCS 100/1, 2(a) (West 1996)), to the extent that a tortfeasor pays more than his *pro rata* share of the common liability (740 ILCS 100/2(b) (West 1996))." Johnson v. United Airlines, 203 Ill. 2d 121, 128 (2003).

The "common liability" is "that amount actually paid by the parties defendant to the injured party pursuant to a good-faith settlement in a reasonable amount in exchange for a full release." Mallaney v. Dunaway, 178 Ill. App. 3d 827, 832 (1988); see also Hall v. Archer-Daniels-Midland Co., 122 Ill. 2d 448, 461 (1988).

In Mallaney, the parties were involved in a motor vehicle accident with a car and a motorcycle. Sandra Horton, a passenger on the motorcycle, was injured and sued the driver of the car, James Dunaway, but not Patrick Mallaney, the driver of the motorcycle. Dunaway filed a counterclaim for contribution against Mallaney. Dunaway settled with Horton, who entered a release of all claims except the pending contribution counterclaim. Mallaney, 178 Ill. App. 3d at 829. Prior to trial on the contribution claim, Dunaway sought to have the trial court set the common liability to the amount of the settlement. Dunaway asserted that Mallaney's trial strategy was to contend that the injuries suffered by Horton were greater than the settlement amount and that Dunaway's percentage of fault was greater than Mallaney's. Under this strategy, Mallaney could minimize or avoid paying a share of the settlement amount. The trial court denied Dunaway's motion and appealed under Supreme Court Rule 308 (155 Ill. 2d R. 308). Mallaney, 178 Ill. App. 3d at 829-30.

The reviewing court considered whether the "common liability" was limited to the amount of the settlement or if a third-party defendant is allowed to establish at the trial for contribution that the injured party's damages exceeded the settlement. Mallaney, 178 Ill. App. 3d at 830. "The policy of the Contribution Act is to encourage compromise and settlement in the absence of bad faith, fraud or collusion. [Citation.] This policy is promoted by approving settlements that

6

represent a fair compromise of the parties' interests, even though the dollar amount so given does not accurately represent the injured party's damages." Mallaney, 178 Ill. App. 3d at 833. The court then concluded that the amount paid to the injured party "in exchange for the release of all claims against the joint tortfeasors constitute[d] the 'common liability.' " Mallaney, 178 Ill. App. 3d at 833; see also Ziarko v. Soo Line Railroad Co., 161 Ill. 2d 267, 285-86 (1994).

Section 2 of the Contribution Act provides, in relevant part:

"(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.

(e) A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement."
740 ILCS 100/2 (West 2006).

To reject an arbitration award, a party must file written notice of the rejection and request to proceed to trial with the clerk of the circuit court, along with a $200 fee, within 30 days of the filing of the arbitration award. 166 Ill. 2d R. 93(a). If no one rejects the award, then any party may move to enter judgment on the award. 155 Ill. 2d R. 92(c).

Here, Davis settled with Zellers for $17,500 in exchange for a release of all claims against both Davis and Hernandez. At that point, the "common liability" was set in the amount of $17,500. The only question remaining was the apportionment of fault under the contribution counterclaim. That question was submitted to arbitration after the dismissal of Zellers' lawsuit against both Davis and Hernandez. Following a hearing, the arbitrators found Hernandez to be 100% negligent in the accident.

Davis filed a motion for judgment on the award, which the trial court granted and then awarded $17,500, the full amount of the common liability, in damages. Hernandez did not reject the arbitrators' finding of 100% negligence, but contends on appeal that since the arbitrators did not award any money damages to Davis, the trial court lacked the authority to award damages. We disagree.

The arbitrators were not asked to assess or apportion damages because that amount had already been determined by the settlement. The arbitrators were presented with one issue, the limited issue of apportionment of fault. We point out that in a contribution action after settlement, which is what occurred here, the Illinois Pattern Jury Instructions, Civil, No. 600.11 (Supp. 2008) (hereinafter, IPI Civil (2008) No. 600.11) do not instruct the jury to make an award of damages.

"600.11 Apportionment of Responsibility–Contribution

8

Following Settlement–Negligence

To apportion damages, you must determine from all the evidence the relative degree of fault of each party to this lawsuit [and of any persons identified in the verdict form] who proximately caused

_____ [injuries] [damages].
  plaintiff's

In making that determination, you should consider the degree to which the [condition of the product] [and] [person's] [and] [entity's] conduct proximately caused plaintiff's [injuries] [damages].

In your verdict form, you will state the percentage of fault of each of these persons. The total of these percentages must add up to 100%." IPI Civil (Supp. 2008) No. 600.11.

In accordance with how a jury would apportion fault, the arbitrators only apportioned fault between Davis and Hernandez. Once the arbitrators found in favor of Davis and apportioned 100% of the fault to Hernandez and since neither party objected to the award, the counterclaim was properly submitted to the trial court for entry of judgment. Following a motion by Davis, the trial court entered judgment on the arbitration finding that Hernandez was 100% at fault and then awarded 100% of the common liability, *i.e.*, the amount of the settlement, to counterplaintiffs as damages. In entering judgment on the arbitration award, the trial court did not alter or correct the finding by assessing the amount of the common liability against Hernandez. The amount of damages was never at issue and, thus, was not part of the arbitration award. The proceedings

both in arbitration and in the trial court conformed with the Contribution Act.

Further, Hernandez's discussion that the trial court cannot reject or modify an arbitration award due to a party's confusion does not help Hernandez but, rather, supports counterplaintiffs' position. In Thomas v. Leyva, 276 Ill. App. 3d 652 (1995), a defendant misinterpreted the amount of the arbitration award and did not file a rejection. On appeal, the reviewing court declined to modify the arbitration award because of a party's misunderstanding such that "it would be unreasonable to compel plaintiffs to proceed to trial on the merits merely because [a defendant] realized, months later, that the results of the judgment were not to her liking." Thomas, 276 Ill. App. 3d at 655. While Hernandez cited this case to support his assertion that counterplaintiffs misunderstood the arbitration award, we find it applicable to illustrate Hernandez's misunderstanding. Hernandez asserts that the arbitration award must be entered as written without considering money damages, as the arbitrators did not award damages. As previously discussed, the arbitrators were not asked to determine money damages nor could they, as the common liability was already set at $17,500; they were only asked to apportion fault. Hernandez did not reject the arbitrators' finding that he was 100% negligent and is bound by that finding.

Next, Hernandez contends that the trial court erred in declining to make a finding of good faith as to Davis's settlement with Zellers and without that finding, the trial court's judgment must be reversed. Counterplaintiffs maintain that a good-faith finding was not required, but even if it were, this court can conclude from the record that counterplaintiffs have sustained their burden that the settlement was in good faith.

We conclude that the trial court was correct in holding that a good-faith finding was not necessary under these facts. We look to the decisions in Hall and Mallaney for support of our conclusion. In Hall, the tort plaintiff was injured at a construction site and filed a negligence cause of action against two defendants. One of the defendants, Archer-Daniels-Midland Corporation (ADM), filed a counterclaim for contribution against the other defendants and a third-party claim for contribution against the tort plaintiff's employer. ADM settled with the tort plaintiff in which all of the defendants were released from the negligence action. The contribution claim proceeded to a jury and it apportioned fault among the three tortfeasors. ADM then asked the trial court to enter judgment on the jury finding and it then apportioned the settlement amount according to the jury's finding. Hall, 122 Ill. 2d at 450-51.

On appeal, the supreme court considered multiple issues, but only one is relevant to the instant matter. The tort plaintiff's employer contended that ADM failed to make a *prima facie* case for contribution and failed to show that the amount of the settlement was reasonable and made in good faith. Hall, 122 Ill. 2d at 460. The supreme court disagreed.

> "It is evident here that the settlement reached by ADM and
> the plaintiff was in good faith and was reasonable, and that ADM
> paid more than its proportionate share of the common liability. In
> settling with the plaintiff and extinguishing the potential tort liability
> of the others, ADM undertook the collective liability of the parties
> for the injuries at issue here, subject only to whatever success it
> might later have in its contribution actions against [the counter-

11

defendant and third-party defendant]. That circumstance would give rise to a presumption of good faith on the part of a contribution plaintiff who has settled the underlying tort action. Whether ADM paid an amount in excess of its *pro rata* share of the common liability was the point decided by the jury in the trial of ADM's contribution claims, assuming that the amount of the settlement was appropriate. And as we have already indicated, the amount of the settlement was reasonable, in light of Hall's injuries, and [third-party defendant and counterdefendant] did not attempt in the trial court to contradict the reasonableness or good faith of the settlement." Hall, 122 Ill. 2d at 461.

The Mallaney court followed the decision in Hall and further explained.

"A settlement given in good faith may be presumed reasonable in the absence of a timely objection in the trial court. And, the mere fact that an injured party's actual damages exceed the amount of the settlement does not prove that the settlement was unreasonable. [Citation.] Obviously, there are cases where the plaintiff is willing to settle for far less than the amount of actual damages sustained where factors such as plaintiff's unwillingness to sue a potential defendant, as here, plaintiff's unwillingness to go to trial, plaintiff's comparative negligence, time barring or other

12

potential defenses merit consideration during settlement negotiations. Compromise under such circumstances is neither collusive nor fraudulent, but entirely compatible with the policy underlying the Contribution Act. Thus, to prevail on a challenge to the reasonableness of a settlement, a defendant to the contribution claim would have to establish that the difference between the settlement amount and the value of the injured plaintiff's claim for compensatory damages was substantial enough to smack of 'bad faith,' collusion or fraud." Mallaney, 178 Ill. App. 3d at 833.

Here, Davis, like ADM, "undertook the collective liability of the parties" by settling the negligence action with Zellers and releasing both himself and Hernandez. Davis's settlement gives rise to the presumption of good faith. If Hernandez wanted to challenge the good faith of the settlement, he should have objected in the trial court at the time the parties were released from Zellers' action. Hernandez did not do so, and therefore, he forfeited any challenge to the good faith of the settlement. Accordingly, the trial court correctly determined that a good-faith finding was unnecessary after the apportionment of fault had occurred, as the only action remaining was the entry of judgment.

Moreover, we note that Hernandez's reliance on Johnson is misplaced. Johnson presented a different factual situation. In that case, one defendant settled with the tort plaintiffs and extinguished its own liability in contribution to the other nonsettling tortfeasors. The settling tortfeasor and the plaintiffs moved for a good-faith finding of the settlement and the nonsettling

13

tortfeasors opposed the motion. <u>Johnson</u>, 203 Ill. 2d at 125-26. The trial court approved the good-faith settlements and the contribution claims against the settling tortfeasor were dismissed. <u>Johnson</u>, 203 Ill. 2d at 126. In contrast, this case involved the settlement between the tort plaintiff and one tortfeasor that carried the entire common liability and released all tortfeasors. This settlement did not extinguish a contribution claim by a nonsettling tortfeasor, as it did in <u>Johnson</u>, but allowed for Davis to pursue his contribution claim against Hernandez.

Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

GARCIA, P.J., and CAHILL, J., concur.