RONALD J. ZIARKO, Plaintiff-Appellee, v. SOO LINE RAILROAD COMPANY, Defendant-Appellant and Counterplaintiff-Appellant and Counterdefendant-Appellant and Third-Party Plaintiff-Appellant (Milwaukee Motor Transportation Company, Defendant and Counterdefendant-Appellee and Counterplaintiff-Appellee; Nielson Brothers Cartage Company, Third-Party Defendant-Appellee).

First District (1st Division)   Nos. 1—90—2112, 1—90—2151, 1—91—1871 cons.

Opinion filed June 29, 1992.—Rehearing denied July 28, 1992.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Ivar A. Azeris, and Edward M. Kay, of counsel), for appellant.

Cassiday, Schade & Gloor, of Chicago (Timothy J. Ashe, Lynn D. Dowd, and Kathlein K. Krider, of counsel), for appellee Milwaukee Motor Transportation Company.

JUSTICE O'CONNOR delivered the opinion of the court:

While Ronald J. Ziarko tended to his tractor-trailer rig in a railroad yard owned by the Soo Line Railroad Company (Soo Line), one of that company's trains struck the rig which then struck Ziarko. The resulting injuries to Ziarko were extensive and necessitated amputation of his right leg.

Ziarko subsequently sued Soo Line and Milwaukee Motor Transportation (Milwaukee Motor), the entity which operated the area of the yard where the accident occurred. Based on the same alleged acts, Ziarko charged Soo Line with negligence and willful and wanton conduct in respective counts. The single count against Milwaukee Motor sounded in negligence. In turn, Soo Line and Milwaukee Motor filed counterclaims against each other which actions included counts for contribution (see Ill. Rev. Stat. 1989, ch. 70, par. 302).

Ziarko's action proceeded to trial before a jury which rendered a verdict of $7,061,854.63 against both Soo Line and Milwaukee Motor. A special interrogatory revealed that the jury's award against Soo Line was premised on the determination that its conduct was willful and wanton, not negligent. The jury further determined Soo Line was 95% at fault in the accident and Milwaukee Motor was 5% at fault. Judgment was entered on the counterclaims with liability apportioned against each defendant accordingly.

Soo Line and Milwaukee Motor pursued separate appeals. With review of those matters pending, Soo Line tendered, and Ziarko accepted, monies in settlement of all claims against both defendants. We then ordered the circuit court to consider whether Soo Line was entitled to contribution in view of the following pertinent language of the Contribution Act:

"The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." Ill. Rev. Stat. 1989, ch. 70, par. 302(b).

Because the amount of the settlement differed from the verdict entered, a question arose, with attendant consequences, as to which amount should be used to determine the "common liability." If common liability equalled an amount paid in settlement of the underlying claim, Soo Line would be entitled to recover 5% of that sum from Milwaukee Motor because the jury limited Soo Line's *pro rata* share of the liability at 95%. Alternatively, if common liability equalled the amount of a jury's verdict, Soo Line could recover nothing from Milwaukee Motor because the amount of the settlement, $6,650,000, was less than 95% of the $7,061,854.63 verdict, $6,709,761.73. In that case, Soo Line actually would have paid less than its *pro rata* share of liability.

The trial judge measured common liability against the jury verdict and denied contribution to Soo Line. We conclude the trial judge was correct in his interpretation of the Contribution Act. Moreover, based upon the recent decision of our supreme court in *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, it appears the Contribution Act can afford no remedy to Soo Line because the jury determined Soo Line's conduct was willful and wanton.

■ In *Burke*, the supreme court resolved a conflict amongst Illinois courts regarding the characterization of willful and wanton conduct, distinguishing that type of conduct from simple negligence. (*Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d at 443.) The court determined willful and wanton conduct constitutes conduct that is either intended or done with a conscious disregard or indifference for the consequences when the known safety of other persons is involved. (*Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d at 443.) That conclusion was reached in the context of answering whether a defendant's liability based on willful and wanton conduct could be reduced by the plaintiff's negligence, not in the context of a

contribution action among joint tortfeasors. Prophetically, however, in *Bresland v. Ideal Roller & Graphics Co.* (1986), 150 Ill. App. 3d 445, 501 N.E.2d 830, the appellate court reached the same conclusion in precluding contribution to a joint tortfeasor whose liability had been premised on willful and wanton conduct. The holding in *Bresland* would appear strengthened by the holding in *Burke.* Because we agree with the basis upon which *Bresland* was decided, we conclude Soo Line has no remedy under the Contribution Act against Milwaukee Motor.

Nevertheless, because *Burke* does not answer the specific question presented in *Bresland* and now here, we consider it appropriate to address Soo Line's argument that under the Contribution Act it has paid more than its *pro rata* share of liability.

No contribution action has been decided under the same set of facts as are in issue here. However, Soo Line directs attention to *Mallaney v. Dunaway* (1988), 178 Ill. App. 3d 827, 533 N.E.2d 1114, arguing that case determines the question of whether the settlement sum or the verdict best represents defendants' common liability. That case involved a collision between a motorcycle operated by Patrick Mallaney and an automobile driven by James Dunaway. Sandra Horton was a passenger on Mallaney's motorcycle at the time of the collision. Horton sued Dunaway for injuries she sustained in the accident. Horton did not sue Mallaney. Prior to trial, Horton settled with Dunaway for $98,500.

Dunaway filed a contribution action against Mallaney. Prior to commencement of that action, Dunaway sought an order to fix the amount of common liability at $98,500. Dunaway asserted that Mallaney's trial strategy was to show that Dunaway's percentage of fault was greater than Mallaney's by introducing evidence showing Horton's damages were greater than $98,500. The circuit court denied the motion.

A majority of the appellate court reversed. The court determined that the settlement amount was the proper measure of common liability, reasoning that "the phantom dollar figure" Mallaney sought to establish bore "no true relation to the amount the tortfeasors [were] obligated to pay to the injured party." (*Mallaney,* 178 Ill. App. 3d at 831, 533 N.E.2d at 1116.) The majority noted that its determination furthered a policy of the Contribution Act to encourage good-faith compromise and settlement. *Mallaney,* 178 Ill. App. 3d at 833, 533 N.E.2d at 1117.

The court in *Mallaney* was correct to conclude that the settlement amount was the proper measure of common liability in that case. The

majority's opinion, however, does not speak to the distinguishing aspect of the present case, and, to that extent, Soo Line's insistence that *Mallaney* decides the issue simply is wrong. Here, unlike the situation in *Mallaney*, a jury rendered a verdict regarding liability, determining the appropriate compensation for Ziarko, and a judgment was entered. That verdict is no phantom dollar figure.

■ Nevertheless, guidance does exist in *Mallaney* as to the appropriate measure of common liability given both a verdict and a settlement. But that guidance is found in Justice Heiple's dissent, not the majority opinion. Justice Heiple recognized why, given a situation such as presented here, the common liability cannot be measured by the terms of an amount paid in settlement of the injured party's claims:

> "Assume that a blameless person has been injured by two joint tortfeasors to the tune of $100. Assume further that each tortfeasor was 50% at fault. Assume further that the blameless person has settled the $100 claim in full with one of the tortfeasors. The Act permits the tortfeasor who was 50% at fault but who paid the entire claim to recover 50% ($50) from the other joint tortfeasor. ***
>
> &ast; &ast; &ast;
>
> *** If the claim was, in fact, worth $200 and if tortfeasor one was 50% at fault, then, given a $100 settlement, tortfeasor two should pay nothing. That is because tortfeasor one, in such case, paid only his fair share. That is to say, tortfeasor one was 50% at fault and paid $100 on a $200 loss. That is exactly what tortfeasor one should have paid. Tortfeasor two owes him nothing.
>
> Likewise, if the $100 claim was, in fact, only worth $10, tortfeasor one, in making a settlement for $100, has overpaid the claim by $90. He has paid 10 times what the claim was objectively worth. He may even have done so in good faith. If tortfeasor two was 50% at fault, should he be required to contribute $50 towards the settlement of a claim which was only worth $10? Certainly not. Tortfeasor two should not be required to contribute more than 50% of the fair value of the claim. That is to say, $5."
> (178 Ill. App. 3d at 834-35, 533 N.E.2d at 1117-18 (Heiple, J., dissenting).)

Only a verdict can be the measure of the "objective[ ] worth" or "fair value" of a claim because the fact finder's determination of liability and compensation based upon the evidence presented at trial is the sole measure of any tortfeasor's true liability. (*Mallaney*, 178 Ill. App. 3d at 834-35, 533 N.E.2d at 1117-18 (Heiple, J., dissenting).) Although the point should be obvious, that understanding is bolstered by realization that an

amount accepted in a good-faith settlement may actually bear no accurate representation to the injured party's damages. (See *Mallaney*, 178 Ill. App. 3d at 833, 533 N.E.2d at 1117.) If one joint tortfeasor is allowed to use the amount paid in settlement as the measure of common liability in a contribution action where a verdict has been rendered, that tortfeasor is empowered to determine what the actual dollar amount of his *pro rata* share will be. That amount may bear no relation to the tortfeasor's fault. Nothing in the Contribution Act can be so read to empower tortfeasors.

Soo Line argues that only in using the settlement amount as the measure of common liability is the goal of the Contribution Act to encourage compromise fostered. Ironically, Soo Line's position might just as well be seen to work at cross-purposes to that end. A principal joint tortfeasor might find it more advantageous to reject, out of hand, pretrial settlement negotiations that he believed accurately approximated the injured party's damages, electing, nevertheless, to contest liability at trial. The tortfeasor would be comforted by the notion that, faced with a jury verdict apportioning liability, he could then offer the injured party a marginally lesser amount to avoid the cost of appeal and thereby effectively decrease the actual dollar amount of his *pro rata* share of liability. That is a curious type of compromise and one we do not believe was envisioned by the Contribution Act.

As Milwaukee Motor accurately points out, Soo Line's argument ignores the difference between a plaintiff's right to settle and a defendant's right to seek contribution. Ziarko's willingness, after judgment, to accept some lesser amount, avoiding both the expense of appeal and the risk of reversal, has little to do with an objective determination of Soo Line's true liability as determined by a verdict rendered after a full trial. Moreover, the reality of Ziarko's acceptance of the post-judgment settlement, which, we note, resulted in Soo Line paying in excess of $600,000 less than 95% of the amount determined by the jury, indicates the Contribution Act's goal of encouraging settlement is not seriously jeopardized.

■ We conclude that where a verdict has been rendered by the fact finder, it is that amount, and not the amount of a settlement, that represents the common liability for purposes of the Contribution Act. Accordingly, we affirm the decision of the circuit court denying Soo Line contribution from Milwaukee Motor.

Affirmed.

CAMPBELL and MANNING, JJ., concur.