(No. 74212.—

# RONALD J. ZIARKO v. SOO LINE RAILROAD COMPANY, Appellant (Milwaukee Motor Transportation Company, Appellee).

*Opinion filed June 16, 1994.—Rehearing denied October 3, 1994.*

268

BILANDIC, C.J., took no part.
HARRISON, J., concurring.
NICKELS, J., joined by HEIPLE, J., dissenting.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Ivar R. Azeris and Edward M. Kay, of counsel), for appellant.

Cassiday, Schade & Gloor, of Chicago (Timothy J. Ashe, Lynn D. Dowd, D. Patterson Gloor and Morgan A. Milne, of counsel), for appellee.

JUSTICE McMORROW delivered the of the judgment court:

In this appeal, we decide that the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 1992)) permits a defendant found guilty of willful and wanton conduct to seek contribution from a defendant found guilty of ordinary negligence, if the willful and wanton acts did not amount to intentionally tortious misconduct. In addition, we conclude that "common liability" under the Contribution Act is the amount agreed upon in a post-judgment settlement be-

tween the plaintiff and one of the defendants, where the settlement agreement released the plaintiff's claims against both defendant tortfeasors, and there is no argument that the settlement agreement was entered into in bad faith.

## BACKGROUND

Plaintiff Ronald Ziarko was injured in May 1982 in a railroad yard owned by defendant Soo Line Railroad Company (Soo Line). At the time of the accident, Ziarko, who was employed as a truck driver, had stopped his truck in an area of the railroad yard operated by Milwaukee Motor Transportation Company (Milwaukee Motor). Shortly after Ziarko alighted from his truck, the truck was struck by a Soo Line train. This collision caused the truck to hit Ziarko, inflicting substantial injuries.

Ziarko filed suit against Soo Line and Milwaukee Motor. As ultimately amended, the complaint alleged that Soo Line had been guilty of negligent and willful and wanton misconduct and that Milwaukee Motor had been guilty of ordinary negligence. Soo Line and Milwaukee Motor filed cross-counterclaims for contribution under the Contribution Act (740 ILCS 100/2 (West 1992)).

A jury trial was held and a verdict returned for Ziarko in the amount of approximately $7.1 million. The jury determined that Ziarko's contributory negligence amounted to 3%. In addition, the jury found both defendants liable, and assessed Soo Line's fault at 95% and Milwaukee Motor's fault at 5%. In response to a special interrogatory, the jury indicated that it found Soo Line's misconduct had been willful and wanton. The trial court refused to reduce Ziarko's damages by the percentage of his contributory negligence, relying on this court's decision in *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429 (comparative fault

principles inapplicable to contributorily negligent plaintiff where defendant found willful and wanton). The trial court entered judgment according to the percentages of the defendants' liability as apportioned by the jury.

Both Soo Line and Milwaukee Motor appealed from the trial court's judgment. During the appeal, Soo Line and Ziarko entered into a settlement agreement. In this agreement, Soo Line agreed to tender to Ziarko $6.65 million. In exchange, Ziarko agreed to release all of his claims against both defendants.

In view of the settlement agreement between Ziarko and Soo Line, the appellate court entered an order that remanded the matter to the circuit court. Upon remand, the trial court determined that the settlement agreement did not obligate Soo Line to pay more than its pro rata share of the defendants' common liability to Ziarko, as determined in the jury's verdict. As a result, the trial court denied Soo Line's request for contribution from Milwaukee Motor. The appellate court affirmed the trial court's determination (234 Ill. App. 3d 860). This court granted Soo Line's petition for leave to appeal (134 Ill. 2d R. 315). Plaintiff Ziarko is not a party to the instant appeal. The case before this court concerns only the contribution claims of defendants Soo Line and Milwaukee Motor.

### Contribution Between a Willful and Wanton Tortfeasor and a Negligent Tortfeasor

The parties' first argument pertains to whether Soo Line is permitted to seek contribution from Milwaukee Motor under the Contribution Act, in light of the jury's determination that Soo Line was guilty of willful and wanton conduct and Milwaukee Motor was guilty only of negligent conduct. Milwaukee Motor contends that neither the provisions of the Contribution Act nor our common law jurisprudence authorizes a willful and

wanton tortfeasor to seek contribution from a negligent tortfeasor.

Our Contribution Act is intended to apportion liability based upon the relative fault of the parties, and applies when the parties are "subject to liability in tort arising out of the same injury to person or property, or the same wrongful death." (740 ILCS 100/2(a) (West 1992).) Although the Act does not define the scope of the terms "subject to liability in tort," this court has held that the phrase is intended to exclude intentionally tortious conduct. In *Gerill Corp. v. Jack L. Hargrove Builders, Inc.* (1989), 128 Ill. 2d 179, this court observed that the Contribution Act was adopted to codify the decision in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, in which the court adopted the rule that a strict product liability defendant could seek contribution from a negligent defendant. (*Skinner*, 70 Ill. 2d at 16.) This court's decision in *Skinner* did not abolish the view, originally announced in *Merryweather v. Nixan* (K.B. 1799), 101 Eng. Rep. 1337, and subsequently adopted in most States of this country, including Illinois, that contribution is not permissible between intentional tortfeasors. (*Gerill*, 128 Ill. 2d at 203-04.) The rule prohibiting contribution among intentional tortfeasors was founded on the notion that an intentional tortfeasor, whose liability has arisen "entirely [from the tortfeasor's] own deliberate wrong," should not be afforded the equitable benefits of shifting a portion of that liability to another tortfeasor under principles of contribution. (W. Keeton, Prosser & Keeton on Torts § 50, at 336 (5th ed. 1984); see also *Neuman v. City of Chicago* (1984), 110 Ill. App. 3d 907, 910.) The legislative history of the Contribution Act reveals that the General Assembly's adoption of the Act was not intended to alter or modify the common law rule which did not permit contribution among intentional tortfea-

sors. (*Gerill*, 128 Ill. 2d at 204-05.) For these reasons, this court has held that intentional tortfeasors are not entitled to contribution under the Contribution Act. *Gerill*, 128 Ill. 2d at 206.

The question presented for our determination in the present appeal is whether a defendant found guilty of willful and wanton conduct should be precluded from obtaining contribution from a defendant found guilty of ordinary negligence. (See *Lannom v. Kosco* (1994), 158 Ill. 2d 535; *Bresland v. Ideal Roller & Graphics Co.* (1986), 150 Ill. App. 3d 445 (barred contribution for willful and wanton tortfeasor); *Pipes v. American Logging Tool Corp.* (1985), 139 Ill. App. 3d 269 (permitted contribution for willful and wanton tortfeasor); *Neuman v. City of Chicago* (1982), 110 Ill. App. 3d 907 (acknowledged viability of equitable apportionment for willful and wanton tortfeasor whose conduct fell short of intentional behavior); *McQueen v. Shelby County* (C.D. Ill. 1990), 730 F. Supp. 1449 (followed ruling in *Bresland*).) To resolve this question, we look to the similarities and dissimilarities between negligent, willful and wanton, and intentional conduct.

Our jurisprudence has defined negligent conduct as "a failure to exercise the care that a reasonable man of ordinary prudence would exercise to guard against any reasonably foreseeable, unreasonable risks of harm which might flow from his conduct." (*Beccue v. Rockford Park District* (1968), 94 Ill. App. 2d 179, 190; see also Illinois Pattern Jury Instructions, Civil, No. 10.02 (3d ed. 1989); No. 10.03 (3d ed. 1993) (hereinafter IPI Civil 3d).) Generally, "[t]ort intent means *** a desire to cause consequences or at least [a] substantially certain belief that the consequences will result. [Citations.]" 1 M. Polelle & B. Ottley, Illinois Tort Law § 1.01, at 1—3 n.8 (2d ed. 1993); see also *Aetna Casualty & Surety Co. v. Freyer* (1980), 89 Ill. App. 3d 617, 620.

In contrast, this court has offered the following definition of willful and wanton acts:

"A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583.

See also IPI Civil 3d No. 14.01.

Milwaukee Motor argues that willful and wanton acts are considered similar to conduct that is intentionally tortious, and that as a result contribution principles cannot apply where one defendant is found guilty of willful and wanton conduct and another defendant is found guilty of ordinary negligence. To support this argument, Milwaukee Motor relies upon this court's reasoning in *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429. In *Burke*, this court concluded that comparative fault principles cannot be applied to reduce the compensatory damages awarded to a negligent plaintiff for the liability of a willful and wanton defendant. To reach this conclusion, the *Burke* court found a "qualitative difference" between acts of negligence and conduct that is willful and wanton. *Burke*, 148 Ill. 2d at 450.

The *Burke* court's perception of a "qualitative difference" between negligent and willful and wanton conduct was founded on the premise that willful and wanton conduct " ' "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." ' " (*Burke*, 148 Ill. 2d at 448, quoting *Loitz v. Remington Arms Co.* (1990), 138 Ill. 2d 404, 416, quoting *Bresland*, 150 Ill. App. 3d at 457.) However, decisions in this State

have not limited willful and wantonness to instances where the conduct was intentional. Acts have been identified as willful and wanton where the defendant's conduct was intentional, but have also been found to arise where the defendant's actions were merely reckless.

It is well established that willful and wanton acts may be found where the tortious conduct was intentional. Willful and wanton conduct includes that which was performed intentionally. (See, *e.g.*, *Schneiderman*, 394 Ill. at 583.) However, unlike intentionally tortious behavior, conduct characterized as willful and wanton may be proven where the acts have been less than intentional—*i.e.*, where there has been "a failure, after knowledge of impending danger, to exercise ordinary care to prevent" the danger, or a "failure to discover the danger through *** carelessness when it could have been discovered by the exercise of ordinary care." (*Schneiderman*, 394 Ill. at 583.) There is no separate and independent tort of "willful and wanton" misconduct. See *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87; *Mucklow v. John Marshall Law School* (1988), 176 Ill. App. 3d 886, 895.

Our jurisprudence has not been wholly consistent on the degree to which negligent acts are considered similar to willful and wanton behavior. (See *Wassell v. Adams* (7th Cir. 1989), 865 F.2d 849; *Davis v. United States* (7th Cir. 1983), 716 F.2d 418.) For example, it has been remarked that willful and wanton acts bear greater resemblance to intentionally tortious misconduct. (*Bresland*, 150 Ill. App. 3d at 457.) Other cases have observed that willful and wanton behavior is more similar to an act of ordinary negligence. (*Spivack v. Hara* (1966), 69 Ill. App. 2d 22, 26; *Cooper v. Cox* (1961), 31 Ill. App. 2d 51, 56.) Our case law has sometimes used interchangeably the terms "willful and wanton negligence,"

"gross negligence," and "willful and wanton conduct." See, *e.g.*, *Schneiderman*, 394 Ill. at 583 (reviewing evidence to determine whether plaintiff was "guilty of wilful and wanton negligence as a matter of law," where jury found defendant guilty of "gross negligence"); *Illinois Central R.R. Co. v. Goodwin* (1863), 30 Ill. 117, 118 ("[n]egligence of the plaintiff being so apparent, the defendant could be responsible only for gross negligence, which implies a willful injury"); *Oropeza v. Board of Education* (1992), 238 Ill. App. 3d 399, 402 (defining "willful and wanton negligence"); *Batteast v. St. Bernard's Hospital* (1985), 134 Ill. App. 3d 843, 853 (observing that pleadings alleged that defendants were guilty of "acts of an intentionally wilful and wanton nature").

Thus, the label "willful and wanton conduct" has developed in this State as a hybrid between acts considered negligent and behavior found to be intentionally tortious. This hybrid character of willful and wantonness is reflected in case law decisions of this State, which have recognized that willful and wanton acts share many similar characteristics with acts of ordinary negligence. In *Burke*, this court expressly acknowledged that negligent and willful and wanton conduct "shar[e] some characteristics." (*Burke*, 148 Ill. 2d at 451.) This court has previously observed that there is a "thin line" between simple negligence and willful and wanton acts (*Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 35). The comments of this court in *Myers v. Krajefska* (1956), 8 Ill. 2d 322, are particularly apt: "[Willful and wanton conduct] is generally considered in that area of fault between ordinary negligence and actual malice. In view of the fact that it is a matter of degree, a hard and thin line definition should not be attempted." (*Myers*, 8 Ill. 2d at 329.) Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the

facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing.

The court's ruling in *Burke* of a "qualitative distinction" between willful and wanton acts and negligent conduct does not take into account this State's development of the dual characteristics of willful and wanton conduct. The court in *Burke* limited its analysis to willful and wanton acts that are committed intentionally.

To support its conclusion, the *Burke* court relied on the meaning of the term "willful and wanton" as that phrase has been applied to awards of punitive damages, and the significant policy considerations underlying an award of punitive damages. (See *Burke*, 148 Ill. 2d at 448-51.) However, willful and wanton conduct may be grounds not only for punitive damages, but compensatory damages as well. Compensatory damages are designed to make amends for the injuries suffered by the plaintiff, whereas punitive damages are intended to punish the wrongdoer and serve as a deterrent to antisocial behavior in the future. (See, *e.g.*, *Loitz*, 138 Ill. 2d at 414-17.) Because the concerns regarding punitive damages focus upon punishment and retribution, they should not predominate this court's inquiry into the apportionment of defendants' liability for *compensatory damages* when one tortfeasor is found guilty of willful and wanton conduct and another tortfeasor is found guilty of ordinary negligence.

The justifiable concern over the policies underlying punitive damages can be adequately protected by a rule that prohibits apportionment of liability for punitive damages, similar to the rule this court adopted in *Gerill* that bars contribution where both defendants have been found guilty of intentional torts. (See *Gerill*, 128 Ill. 2d 179.) "Keeping in mind that comparative negligence is a method of providing compensation to the plaintiff in

proportion to the relative fault of the parties, whereas punitive damages are to punish the misconduct of the defendant, the conduct of the plaintiff should have no bearing on the award of punitive damages." (J. Palmer & S. Flanagan, Comparative Negligence Manual § 1.310, at 63-64 (rev. ed. 1986).) It has already been established in this State that an award of punitive damages is not subject to contribution. See *Hall v. Archer-Daniels-Midland Co.* (1988), 122 Ill. 2d 448, 458-60; see also *Harriss v. Elliott* (1991), 207 Ill. App. 3d 384, 389; see generally Annot., *Effect of Plaintiff's Comparative Negligence in Reducing Punitive Damages Recoverable*, 27 A.L.R.4th 318 (1984); Piegore, *The Conflict Between Punitive Damages and the Right to Contribution*, 78 Ill. B.J. 338 (1990).

The *Burke* court also justified its position in reliance on the views expressed in the Restatement (Second) of Torts. The Restatement (Second) of Torts does not refer to "willful and wanton" conduct, but rather characterizes conduct as either negligent, reckless, or intentional. (See Restatement (Second) of Torts § 500 (1965).) Under the Restatement's view, a "plaintiff's contributory negligence does not bar recovery for harm caused by the defendant's reckless" conduct. (Restatement (Second) of Torts §§ 482(1), 503(1) (1965).) However, the Restatement also recites that a "plaintiff whose conduct is in reckless disregard of his own safety is barred from recovery against a defendant whose reckless disregard of the plaintiff's safety is a legal cause of the plaintiff's harm." (Restatement (Second) of Torts §§ 482(2), 503(3) (1965).) Unlike the views expressed in the Restatement (Second) of Torts, this court has not addressed the question of whether a plaintiff's willful and wanton acts should serve as a complete bar, or serve as a damage-reducing factor, in the award of compensatory damages, where the defendant has also engaged in willful and

wanton conduct. In addition, the definition of "reckless" under the Restatement is not the same as the definition given in this State to the term "willful and wanton." See Restatement (Second) of Torts § 500 (1965) (defining recklessness as intentionally doing an act, or intentionally failing to do an act, "knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent").

Legal commentary has been critical of this court's decision in *Burke*. (See Hoffman & Bry, *The Status of an Illinois Plaintiff's Comparative Negligence as a Damage-Reducing Factor Where a Defendant Is Found Liable Under the Theory of Willful and Wanton Misconduct*, 16 So. Ill. L.J. 663 (1992); Note, *The Long, Strange Trip of Willful and Wanton Misconduct and a Proposal to Clarify the Doctrine*, 26 J. Marshall L. Rev. 363 (1993).) As this latter commentary suggests, continued adherence to the full scope of the *Burke* decision could lead to harsh and unjust results supported by neither the clear terms of, nor underlying purposes for, our laws regarding comparative fault and contribution. It is of some note that legislation has been introduced in the General Assembly to alter this court's holding in *Burke* and permit comparative fault principles to apply where the plaintiff has been found negligent and the defendant found willful and wanton. See 88th Ill. Gen. Assem., Senate Bill 424, 1993 Sess. (amending section 2—1116 of the Code of Civil Procedure regarding comparative fault).

The *Burke* court limited its analysis to willful and wanton acts as intentionally tortious conduct. On this basis, and in order to further the policy that equitable principles should not lessen the liability of a party found

to have committed an intentionally tortious act, the *Burke* court held that the willful and wanton defendant could not seek to reduce his liability by the percentage of the plaintiff's contributory negligence. See *Burke*, 148 Ill. 2d at 448-52.

We find no injustice to the rule adopted in *Burke* to the extent that it is applied to willful and wanton conduct that amounts to intentional behavior. However, we do not believe that the rule announced in *Burke* carries equal force or validity when applied to willful and wanton acts that are reckless, rather than intentional. The *Burke* court did not address the interests of parties who have been found willful and wanton because of unintentional, reckless behavior. It may be equally unjust to refuse to mitigate the liability of the willful and wanton defendant whose behavior was reckless, rather than intentional, where there are other parties to the incident whose tortious acts also proximately caused the plaintiff's injuries.

Bearing in mind these considerations, we conclude that the determination of whether a willful and wanton defendant should be permitted to seek contribution from a negligent defendant depends upon whether the willful and wanton defendant's acts were reckless or intentional. Our IPI Civil jury instructions recognize that a distinction should be drawn between willful and wanton acts that are intentional and willful and wanton conduct that is unintentional but reckless. According to the IPI Civil jury instructions, the trial judge should instruct the jury as follows, where there is an allegation of willful and wanton acts:

> "When I use the expression 'willful and wanton conduct' I mean a course of action which [shows actual or deliberate intention to harm or which, if not intentional,] shows an utter indifference to or conscious disregard for [a person's own safety] [and] [the safety of others]." (IPI Civil 3d No. 14.01.)

With respect to its Notes on Use, the IPI Civil jury instructions advise trial judges that the first bracketed phrase regarding "actual or deliberate intention to harm" "should be omitted unless a deliberate intention to harm is alleged and supported by evidence sufficient to make a submissible case." IPI Civil 3d No. 14.01, Notes on Use, at 14—3.

We conclude that contribution should not be authorized where the defendant's willful and wanton acts amount to intentional behavior. Allowing contribution where the defendant's willful and wanton acts are found to have been intentional would contradict the holdings in *Skinner* and its progeny, including this court's ruling in *Gerill* that prohibits contribution for intentional tortfeasors, and would be contradictory to the very purpose of contribution. This court has affirmed as the "governing principle in this jurisdiction" that "the costs of *accidental* injury are to be apportioned in accordance with the relative fault of all concerned in the action." (Emphasis added.) *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 31.

In addition, we hold that a defendant found guilty of willful and wanton conduct may seek contribution from a defendant found guilty of ordinary negligence if the willful and wanton defendant's acts were found to be simply reckless, and thus were determined to be less than intentional conduct. We believe this ruling will better serve justice and will be more harmonious with the policies underlying the Contribution Act. "[T]he loss of deterrent effect that would occur upon application of comparative fault concepts to willful and wanton misconduct as well as ordinary negligence would be slight" (*Li v. Yellow Cab Co.* (1975), 13 Cal. 3d 804, 825-26, 532 P.2d 1226, 1241, 119 Cal. Rptr. 858, 873), and "a comprehensive system of comparative negligence should allow for the apportionment of damages in all cases

involving misconduct which falls short of being intentional" (*Li*, 13 Cal. 3d at 826, 532 P.2d at 1241, 119 Cal. Rptr. at 873). See also *Neuman v. City of Chicago* (1982), 110 Ill. App. 3d 907, 910-11.

We believe that the approach we adopt herein will more adequately preserve the important distinctions between negligence, willful and wantonness, and intentionally tortious behavior. By retaining the distinctions between these concepts, our ruling reduces the likelihood that courts, lawyers, and juries will confuse or dilute the different standards applicable to each of these three mental states in tort law. See 1 M. Polelle & B. Ottley, Illinois Tort Law § 1.01, at 1-3 (2d ed. 1993) (noting that "confusion in some of the cases *** seems to authorize an action for assault or battery not merely where the defendant has acted intentionally but also where the defendant has acted only recklessly or even negligently, without knowing with substantial certainty that injury would follow").

Our conclusion in the present cause is supported by the greater weight of authority in other jurisdictions. (See appendix at the end of this opinion.) This court's prior ruling in *Burke* considered only the decisions in a few States on the question of whether a plaintiff's negligent conduct could be compared with the defendant's willful and wanton conduct. (*Burke*, 148 Ill. 2d at 445-48.) The court did not address the additional questions, presented in the decisions cited in the appendix, regarding an apportionment of liability where one defendant's conduct was willful and wanton while another defendant's conduct was negligent, or with respect to an apportionment of liability when there has been an award of punitive damages. Once these additional decisions from other jurisdictions are also considered, it becomes apparent that the majority of jurisdictions (as shown in the appendix) generally

support the conclusion that willful and wanton conduct can be compared to simple negligence in apportioning liability for compensatory damages, provided the willful and wanton acts do not constitute intentional behavior. In addition, the decisions from other jurisdictions generally do not permit the apportionment of liability with respect to awards of punitive damages. See generally Annot., *Application of Comparative Negligence in Action Based on Gross Negligence, Recklessness, or the Like*, 10 A.L.R.4th 946 (1981).

For all of these reasons, we hold that contribution principles may lawfully be applied with respect to an award of compensatory damages where one defendant is found negligent and another defendant is found guilty of willful and wanton acts that did not rise to intentional conduct. The record in the present cause does not reflect that the jury found Soo Line's willful and wanton misconduct to have been intentionally committed. As a result, Soo Line's misconduct did not preclude its claim for contribution from Milwaukee Motor. Because the trial court and the appellate court erroneously found that Soo Line, as the willful and wanton tortfeasor, was not entitled to contribution, those rulings are hereby reversed.

*"Common Liability" Under the Contribution Act*

The parties also raise a second issue, regarding the proper meaning of the term "common liability" under section 2(b) of the Contribution Act. This section states in pertinent part:

"The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." 740 ILCS 100/ 2(b) (West 1992).

The question presented by the parties is whether

"common liability" in the instant cause is the amount of the jury verdict, approximately $7.1 million, or the amount agreed upon by Ziarko and Soo Line in their settlement, $6.65 million.

Soo Line claims that "common liability" in the present case should be the amount in the settlement agreement, *viz.,* $6.65 million. Soo Line notes that the jury assessed Milwaukee Motor's fault at 5%. On this basis, Soo Line claims that it is entitled to contribution from Milwaukee Motor for 5% of the settlement amount, *viz.,* $332,500.

Milwaukee Motor argues that "common liability" in the instant cause is the amount of the jury's verdict, approximately $7.1 million. The record reflects that the jury found Soo Line 95% at fault for Ziarko's injuries, which amounted to approximately $6.7 million. Consequently, Soo Line's settlement amount, $6.65 million, is less than the amount for which Soo Line was found liable by the jury. Milwaukee Motor argues that because Soo Line's settlement amount is less than the amount of the jury's verdict against Soo Line, Soo Line did not pay more than its pro rata share in the settlement agreement. For these reasons, Milwaukee Motor contends that Soo Line is not entitled to any funds in contribution from Milwaukee Motor.

Generally, statutory provisions are to be given their plain and ordinary meaning in order to give effect to the objective of the legislation. (*DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund* (1993), 156 Ill. 2d 377, 382-83.) One of the fundamental goals of the Contribution Act is to encourage settlements that equitably apportion damages among the tortfeasors according to their relative fault. (*Wilson v. Hoffman Group, Inc.* (1989), 131 Ill. 2d 308.) As a general rule, a settlement agreement is considered valid and enforceable if the agreement was entered into in good faith.

(*Wilson*, 131 Ill. 2d at 318.) To determine the validity of the settlement agreement, the court looks to the totality of the circumstances surrounding the making of the agreement. *Wilson*, 131 Ill. 2d at 318.

Our courts have consistently rejected arguments that the sole guidepost of the proper settlement amount for the injured plaintiff's damages must be the amount set by a jury in a trial on the merits of the plaintiff's claims against the defendants. "It has been recognized that settlements may be substantially different from the results of litigation because damages are often speculative and the probability of liability uncertain. [Citation.]" (*Smith v. Texaco, Inc.* (1992), 232 Ill. App. 3d 463, 469 (citing *Ruffino v. Hinze* (1989), 181 Ill. App. 3d 827, 830-32, *O'Connor v. Pinto Trucking Service, Inc.* (1986), 149 Ill. App. 3d 911, 916, *Doellman v. Warner & Swasey Co.* (1986), 147 Ill. App. 3d 842, 848-49, *Wasmund v. Metropolitan Sanitary District of Greater Chicago* (1985), 135 Ill. App. 3d 926, 929-30, and *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 94-95).) A disparity between the value of the settlement and the amount of damages which the jury might have awarded does not render the settlement agreement invalid. "The circumstance that the [defendant's] eventual liability pursuant to the jury's verdict would have been much greater does not void the [defendant's] settlement agreement with [the plaintiff], and our courts have declined to utilize a 'proportionality' or 'reasonable range' test in order to determine whether a defendant's settlement with a plaintiff, when compared to the jury's subsequent verdict, was made in good faith. [Citations.]" *McDermott v. Metropolitan Sanitary District* (1992), 240 Ill. App. 3d 1, 46.

This reasoning is reflected in *Mallaney v. Dunaway* (1988), 178 Ill. App. 3d 827, in which our appellate court considered a question similar to the issue raised in the

present cause. The plaintiff in *Mallaney* settled all of her claims in an agreement with one of the defendants. The agreement also released the remaining defendants of their liability to the plaintiff. One of the defendants, who was not a party to the settlement agreement, argued that he should be permitted, in a trial of the contribution actions among the defendants, to contest the amount stated in the settlement. The question presented to the appellate court was whether " 'common liability' " under the Contribution Act was "limited to the amount the injured party has settled her entire cause of action for [in the settlement agreement] \*\*\* or whether \*\*\* [the] third-party defendant [was] entitled to establish in the trial of the contribution action that the injured party's damages exceeded that amount." (*Mallaney*, 178 Ill. App. 3d at 830.) The observations of the court in *Mallaney* are equally applicable to the present cause, and bear repeating:

> "The policy of the Contribution Act is to encourage compromise and settlement in the absence of bad faith, fraud or collusion. [Citation.] This policy is promoted by approving settlements that represent a fair compromise of the parties' interests, even though the dollar amount so given does not accurately represent the injured party's damages.
>
> A settlement given in good faith may be presumed reasonable in the absence of a timely objection in the trial court. And, the mere fact that an injured party's actual damages exceed the amount of the settlement does not prove that the settlement was unreasonable. [Citation.]" *Mallaney*, 178 Ill. App. 3d at 833.

In light of this reasoning, the court in *Mallaney* concluded that the parties' "common liability" was the amount stated in the settlement agreement, even if the nonsettling defendant might have been able to prove that actual damages exceeded or were less than the amount provided for in the settlement agreement. *Mallaney*, 178 Ill. App. 3d at 832-33.

The appellate court in the instant cause found *Mallaney* distinguishable because the settlement agreement in that case was reached before the amount of the plaintiff's damages was decided by the jury, while the settlement agreement in the present case was entered into after the jury's verdict was returned. However, jury verdicts may be modified, reduced, or vacated on post-trial motion or on appeal. (See, *e.g.*, *Henry v. St. John's Hospital* (1990), 138 Ill. 2d 533 (jury verdict subject to trial court remittitur).) As a result, we do not believe that, once the jury's verdict is returned, the parties should be obligated to accept the verdict amount as the final determination of the defendants' common liability to the plaintiff to be reflected in a post-judgment settlement agreement. As the court noted in *Jessee v. Amoco Oil Co.* (1992), 230 Ill. App. 3d 337:

> "[T]here exist several reasons why [a] plaintiff would settle with [a tortfeasor defendant] [for a lesser amount than the jury's verdict] subsequent to a judgment, none of which point to collusion or fraud. At the time of the settlement, post-trial motions were pending; a viable explanation for plaintiff's settlement is that she anticipated a lengthy appeal process which might have forestalled collection of her judgment, providing an impetus for her to settle. A further reason for settlement while post-trial motions were pending could be plaintiff's desire to settle in order to achieve some measure of certainty." *Jessee*, 230 Ill. App. 3d at 348.

Consistent with this analysis, we believe that "common liability" in the case at bar means the good-faith amount stated in the settlement agreement between Ziarko and Soo Line, even though the evidence may have proven, to a reasonable jury, that the plaintiff's damages exceeded or were less than the sum stated in the settlement agreement. We believe that this conclusion is supported by the language of the Contribution Act. "Nowhere in the Contribution Act does the legislature distinguish between pretrial or post-

judgment settlements ***." (*Jessee*, 230 Ill. App. 3d at 347.) Under section 2(b) of the Act, both types of settlement agreements are treated identically, and both entitle the settling defendant to seek contribution from another tortfeasor whose liability to the injured plaintiff is also extinguished in the settlement agreement.

We note that the explicit provisions of the settlement agreement between Soo Line and Ziarko specifically extinguished Milwaukee Motor's liability to Ziarko. Section 2(c) of the Contribution Act provides in pertinent part that a settlement agreement "does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the [agreement]." (740 ILCS 100/2(c) (West 1992).) If the settlement agreement had not extinguished Milwaukee Motor's liability to Ziarko, Ziarko could have pursued Milwaukee Motor for the full net amount due on the jury verdict, after crediting the settlement amount paid by Soo Line. See, *e.g.*, *Henry v. St. John's Hospital* (1990), 138 Ill. 2d 533.

In our view, if Milwaukee Motor believed that the settlement agreement did not accurately reflect the parties' "common liability" to Ziarko, then Milwaukee Motor should have challenged the good-faith nature of the settlement agreement. (See *Hall v. Archer-Daniels-Midland Co.* (1988), 122 Ill. 2d 448, 460-61.) In the context of a good-faith argument, Milwaukee Motor also could have presented its claim that Soo Line should not be permitted to "retain the jury's determination as to the percentages of liability, and to then apply those percentages of Soo Line's own determination as to the amount of the plaintiff's damages." According to Milwaukee Motor, "Soo Line cannot pick and choose those portions of the verdict it wishes to enforce, and

those it wishes to ignore." However, Milwaukee Motor did not complain that the settlement agreement was entered into in bad faith, nor has Milwaukee Motor raised the argument that the percentages of fault as determined by the jury were inequitable or in error. Consequently, we find Milwaukee Motor's arguments on these matters an inadequate basis to sustain Milwaukee Motor's position in this appeal. The cases cited by Milwaukee Motor do not support the position it has taken in the instant cause. See *Mason v. F. Lli Luigi & Franco Dal Maschio Fu G.B.* (7th Cir. 1987), 832 F.2d 383, 389-90 (right to contribution remains "contingent, subordinate and inchoate" until defendant makes payments in excess of his pro rata share of common liability); *Verson Allsteel Press Co. v. Major Spring & Manufacturing Co.* (1982), 105 Ill. App. 3d 419 (contribution principles did not apply to cause of action that arose before date on which contribution rule went into effect; court rejected argument that a "contribution cause of action" accrued on date judgment paid, rather than date on which negligence cause of action arose).

By reaching a settlement agreement with Ziarko, Soo Line was able to convince Ziarko to accept less money than the amount awarded by the jury. Moreover, because of Soo Line's efforts, Ziarko further agreed to extinguish the liability of both Soo Line and Milwaukee Motor. As a result, Milwaukee Motor was relieved of its liability to Ziarko, which amounted to approximately $353,000 under the jury's verdict. In light of these considerations, we conclude that the trial court was in error when it determined that the defendants' "common liability" in the present case was the amount reached in the jury's verdict. In our view, the court should have held that the parties' common liability to Ziarko which should be subject to contribution principles was the amount agreed upon in the settlement between Ziarko and Soo Line.

The appellate court in the case at bar affirmed the trial court's denial of Soo Line's request for contribution. Because we conclude that Soo Line's status as a willful and wanton tortfeasor did not bar it from seeking contribution from Milwaukee Motor in the present cause, and because we find that the defendants' common liability in this case was the amount stated in the settlement agreement between Ziarko and Soo Line, we reverse the appellate and circuit courts' judgments and remand the matter for further proceedings consistent herewith.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*

CHIEF JUSTICE BILANDIC took no part in the consideration or decision of this case.

JUSTICE HARRISON, concurring:

I agree with the result reached by the majority. I write separately because I see no justification for revisiting our decision in *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429. *Burke* was a comparative negligence case. Under comparative negligence principles, a defendant's liability in an action "based on negligence" can be offset to the extent that the plaintiff was contributorily negligent, subject to statutory limitations. (See 735 ILCS 5/2—1116 (West 1992).) The question that confronted this court in *Burke* was simply whether an action against a defendant for willful and wanton conduct constituted an action "based on negligence" within the meaning of this rule.

The case before us today involves the quite different issue of contribution among joint tortfeasors. The doctrines of contribution and comparative fault are distinct. (*J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 463.) Contribution

is governed by the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 1992)). By its terms, that statute does not limit the right of contribution among joint tortfeasors to actions "based on negligence." Rather, it employs much broader language, specifying that a right of contribution exists whenever two or more persons are "subject to liability in tort" arising out of the same injury to person or property or the same wrongful death. (740 ILCS 100/2(a) (West 1992).) Accordingly, the question we must decide here is not whether a defendant's willful and wanton conduct is "negligence," but whether it constitutes a "tort" within the meaning of the Contribution Act. This is a matter of statutory construction to which *Burke* does not speak.

As the majority correctly notes, Illinois law recognizes that willful and wanton conduct may consist of either intentional behavior or conduct that is unintentional but reckless. Both are torts in the generic sense, and both would seem to fall within the ambit of the Contribution Act. The Contribution Act does not, after all, differentiate between intentional and unintentional torts or tortfeasors, nor does it explicitly limit itself to unintentional torts. Nevertheless, upon review of the common law and the applicable legislative history, our court has held that intentional tortfeasors may not avail themselves of the Act. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.* (1989), 128 Ill. 2d 179.

If we adhere to this precedent (and no one has suggested that we should not), the conclusion is self-evident. A defendant may not seek contribution from a joint tortfeasor where his willful and wanton conduct was intentional. In all other cases, where the conduct is unintentional, contribution is permitted by the express terms of the Contribution Act.

For the purposes of this appeal, we need go no further. The soundness of this court's analysis in *Burke* is

irrelevant. By reaching out to reexamine *Burke*, the court accomplishes nothing but to provide willful and wanton defendants with another opportunity for avoiding the full measure of their liability to the plaintiffs they have injured. If the members of the majority are intent on achieving this unfortunate goal, they should at least wait for a case where the issue is necessary to disposition of the appeal.

JUSTICE NICKELS, dissenting:

I respectfully dissent from the majority's opinion finding a right of contribution between joint tortfeasors, where one tortfeasor is liable for willful and wanton conduct. The Joint Tortfeasor Contribution Act apportions liability based on the relative fault of the parties where they are "subject to liability in tort arising out of the same injury to person or property, or the same wrongful death." (740 ILCS 100/2(A) (West 1992).) As a court of law, our duty is to determine the intent of the legislature where a statute is unclear or ambiguous. *Gerrill Corp. v. Jack L. Hargrove Builders, Inc.* (1989), 128 Ill. 2d 179, 203.

Although I agree that the term "tort" is ambiguous, unlike the majority I acknowledge that this court has already interpreted the statute as encompassing only negligent tortfeasors. In *Gerrill Corp.*, this court considered whether the term "tort" in the Joint Tortfeasor Act encompassed intentional conduct. This court reviewed the legislative history of the Act and determined that "statements made during the floor debates by both the Senate and House sponsors of the bill that was to become the Contribution Act demonstrate that the statute was meant to create a right of contribution for *negligent* tortfeasors." (Emphasis added.) (*Gerrill Corp.*, 128 Ill. 2d at 204-05.) Thus, this court found that there was no right of contribution for intentional tort-

feasors because the Act applies to only negligent conduct.

In *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, this court directly considered the relationship between negligence and conduct that is willful and wanton. This court held that comparative fault principles cannot be applied to reduce the compensatory damages awarded to a negligent plaintiff, where the defendant's liability was premised on willful and wanton conduct. In support, this court stated that "[b]ecause of the qualitative difference between simple negligence and willful and wanton conduct, and because willful and wanton conduct carries a degree of opprobrium not found in merely negligent behavior, we hold that a plaintiff's negligence cannot be compared with defendant's willful and wanton conduct." (*Burke*, 148 Ill. 2d at 451-52.) I see no reason to depart from this reasoning finding a qualitative difference between negligence and willful and wanton conduct that prevents application of comparative fault principles.

Unhappy with the application of our precedent, the majority finds that the legislature "intended" to allow a defendant found liable for his willful and wanton conduct to seek contribution from a negligent joint tortfeasor, as long as the willful and wanton conduct is not intentional. Thus, after acknowledging the confusion surrounding the concept of willful and wanton conduct, the majority further muddies the waters by carving it into "recklessly willful and wanton conduct" and "intentionally willful and wanton conduct." Contribution is then proper where the willful and wanton conduct is not intentional.

The majority justifies this legislative line drawing by blurring the distinctions between willful and wanton conduct and simple negligence. I agree with our precedent recognizing a significant distinction between

conduct that is merely negligent and that which is willful and wanton. Although sharing characteristics of both intentional and negligent conduct, willful and wanton conduct is analytically distinct from either concept.

Engaging in intentional conduct where the injurious results are "substantially certain" to follow is the most wrongful form of conduct. In contrast, negligence is conduct that creates unreasonable risks of harm, without reference to a culpable mental state. The rule transferring the cost of an injury where an actor is negligent rests not on the culpable nature of the wrongdoing, but on the belief that the person who creates unreasonable risks should bear the cost of a resulting injury.

Negligent conduct should be distinguished from willful and wanton conduct because such conduct involves a quasi-mental state. (W. Keeton, Prosser & Keeton on Torts § 34, at 212-13 (5th ed. 1984); *Burke*, 148 Ill. 2d at 449.) Willful and wanton conduct occurs where the actor is aware of a specific risk, and acts in conscious disregard of that risk or with utter indifference to the consequences. While the harm may not be "substantially certain" to follow, consciously disregarding an obvious risk carries with it a culpable mental element absent in simple negligence. (See *Burke*, 148 Ill. 2d at 451.) The law attaches significance to this distinction. For example, immunities can be lost and punitive damages can be awarded where conduct is willful and wanton. That such drastic consequences attach to the characterization of conduct as willful and wanton belies the majority's assertion that such conduct should be compared the same as negligent conduct.

I recognize that forbidding a right of contribution where a party's conduct is willful and wanton, but only slightly responsible for an injury, can produce injustice. Similarly, a party is not entitled to contribution where

his conduct is intentional, but only accounts for a small amount of the damages. I note that the legislature has recently introduced legislation to address the application of comparative fault principles to willful and wanton conduct. I believe that the solution to this problem lies in amendment to the Joint Tortfeasor Contribution Act by the legislature, rather than blurring the distinctions between negligent, willful and wanton and intentional conduct.

The majority not only acts as a super legislature in creating this dual concept of willful and wanton conduct for purposes of the Contribution Act, but also acts in place of the jury in applying the new concept to the present cause. The majority finds that "[t]he record in the present cause does not reflect that the jury found Soo Line's willful and wanton misconduct to have been intentionally committed. As a result, Soo Line's misconduct did not preclude its claim for contribution from Milwaukee Motor." (161 Ill. 2d at 282.) I fail to understand how the jury in the present case could have considered the nature of the willful and wanton conduct, where the distinction between "intentional willful and wanton conduct" and "reckless willful and wanton conduct" had been neither pleaded, proved, nor specifically asked of the jury.

In passing, I question what effect this holding has on the concept of willful and wanton conduct in general. Does a municipality lose immunity under the Tort Immunity Act only where there is "intentional wilful and wanton conduct" or when there is "reckless willful and wanton conduct"? Which type of willful and wanton conduct is proper for imposing punitive damages? Are there now two forms of willful and wanton conduct that should be pleaded in separate counts? Based upon all the foregoing reasons, I respectfully dissent.

JUSTICE HEIPLE joins in this dissent.