(No. 97-CC-2926-

KELLY K. MOORE, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 18, 1998.*

KELLY K. MOORE, *pro se.*

JIM RYAN, Attorney General (MARILYN THOMAS, Assistant Attorney General, of counsel), for Respondent.

## OPINION

SOMMER, C.J.

This claim arises out of an accident which occurred on September 7, 1996. Claimant seeks to recover $555.96 for hospital bills incurred for an injury she sustained when she fell while descending a flight of stairs maintained by Respondent at the New Salem State Park.

The parties waived transcription of the hearing by a court reporter. The record includes Claimant's exhibits 1, 2, and 3 and Respondent's exhibits 1 and 2. Neither party filed a brief.

Claimant testified that on September 7, 1996, she went to New Salem State Park with her sister, niece and son. After touring the building where the oxen were kept, she proceeded down a flight of six wooden stairs with a

wood railing on both sides of the stairs. As she descended the stairs, she noticed there were rocks on the stairs, including the stair on which she fell and the one above it. She described the rocks as pebble size, like the ones you would see in a fish tank. When she noticed the rocks, she turned around to tell her niece to be careful. As she was doing so, she slipped on the rocks on the second stair from the bottom and fell down to the pavement below the stairs. She testified she had used the handrail before she fell but was not holding on to the handrail when she fell. After Claimant fell, her sister, niece and son helped her sit on the stairs since Claimant could not stand up because her left ankle hurt. A member of the park staff, Mr. McKee, came to assist Claimant. She was helped into the front seat of an ambulance and given a ride to her sister's car. Her sister then took her to Memorial Hospital.

At Memorial Hospital x-rays were taken of Claimant's ankle. She was informed she had suffered an ankle sprain. Her ankle was put in a brace and she was given crutches. The next day, someone from the hospital called to tell her the x-rays had been misread. She was informed she had suffered a hairline fracture of her ankle and was referred to Dr. Ludwig. Dr. Ludwig treated Claimant's ankle by wrapping it in an Ace bandage then placing it in the brace she received at the hospital. Claimant stated the ankle was still bothering her at the time of the hearing.

Claimant testified she had incurred bills totaling $555.96 as a result of the accident. Claimant's exhibit 1 contains copies of the bills Claimant had received. She testified the bill for $72 from Sangamon Orthopedic Specialists and the bill for $28 from Clinical Radiologists, S.C. had been paid. The bill for $455.96 from Memorial Medical Center had not been paid and Claimant stated she was being sued by Memorial Medical Center to collect

the unpaid bill. Claimant's exhibit 3 contains copies of documents pertaining to Memorial Medical Center's attempts to collect from Claimant in the Circuit Court of Sangamon County in Case No. 98-SC-0072.

On cross-examination Claimant testified she had been at the park for half an hour before the accident occurred and had toured approximately four buildings before entering the building containing the oxen. She entered the building containing the oxen by going up a flight of stairs on the left side of the building and exited the building on the stairs on the right side of the building. Her sister and her son had already descended the stairs before she fell. She first noticed there were rocks on the bottom step when she was on the second or third step from the top. She then noticed rocks on the other stairs. She stated there were approximately four or five rocks on the stair on which she fell. Claimant identified Respondent's exhibit 1 as a photograph of the building where the accident occurred. She said she fell on the stair in the photograph that is marked with a "C."

Claimant further testified on cross-examination that she was wearing tennis shoes when the accident occurred. She stated her height was listed on her driver's license as being five feet, five inches, and she estimated that her weight on the day of the accident was 300 pounds.

Sharon Berstein was presented as a witness by Claimant. She is Claimant's sister and was with Claimant when the accident occurred. She testified she noticed rocks on the last stair when she was descending the stairs prior to Claimant's fall. After her sister fell, Ms. Berstein noticed several pebble sized rocks on the stair her sister identified as the one on which she fell.

On cross-examination Ms. Berstein testified she did not see her sister fall. She stated there possibly could

have been a dozen rocks on the stair her sister identified as where she fell. Ms. Berstein testified she and her son did not have any problems when they descended the stairs. She also testified she did not use the handrails when she descended the stairs.

Melborn Eugene McKee was presented as a witness for Respondent. Mr. McKee testified that he had been site security officer at New Salem State Park since May 1, 1975. He was working the 4:00 p.m. to midnight shift on September 7, 1996, the date of Claimant's accident. He was summoned to respond to an accident report at the building he identified as the carding mill at 5:05 p.m. The carding mill is the same building Claimant identified as the building where the oxen were kept, which is pictured in Respondent's exhibit 1. It was light when Mr. McKee arrived at the accident scene. Mr. McKee testified that when he was filling out an accident report Claimant stated she was holding the rail and descending the stairs when she fell on the second stair from the bottom. He did not recall Claimant saying anything about rocks on the stairs when he filled out the accident report. Mr. McKee did not check the stairs immediately after the accident, but he did return to the site later in the evening. When he examined the stairs where Claimant said she fell he did not notice anything unusual.

David Hedrick was presented as a witness for Respondent. Mr. Hedrick testified he had been site manager at New Salem State Park for 18 years and is responsible for the overall administrative supervision of the park. He checked the carding mill building two times a week. He stated that the stairs where Claimant fell were made of split logs and were 40 inches wide and 12 to 16 inches in depth. The railings on each side of the stairs were 36 inches above the stairs. He had reviewed accident records

for the accident site and found three accidents had occurred on the stairs in the last 10 years. These accidents occurred in 1991, 1992 and 1996, and the stairs were in the same condition during these accidents as when Claimant had her accident. Mr. Hedrick did not give any information regarding the details of prior accidents. Mr. Hedrick further testified that the park receives approximately 600,000 visitors a year.

On cross-examination, Mr. Hedrick testified that he could not say on which stair the prior accidents occurred. He further testified he had found that a total of nine accidents had occurred in the entire park in the last 10 years.

This claim appears to be governed by the Recreational Use of Land and Water Areas Act, hereinafter referred to as the Act (745 ILCS 65/1 *et seq*). Section 3 of the Act provides that, except as provided in section 6 of the Act, an owner of land owes no duty of care to keep premises safe for entry or use by a person for recreational or conservation purposes, or to give any warning of a natural or artificial dangerous condition, use, structure, or activity on such premises to persons entering for such purposes. Recreational or conservation purpose, as defined in section 2 of the Act, includes any activity undertaken for conservation, resource management, exercise, education, relaxation, or pleasure on land owned by another. Land as defined by section 2 of the Act includes private ways, buildings and structures when attached to the realty. Owner as defined in section 2 of the Act includes the State of Illinois. Section 6 of the Act provides that nothing in the Act limits in any way any liability for willful or wanton failure to guard or warn against a dangerous condition, use, structure, or activity.

The State is not an insurer. For Claimant to prevail in this claim she must prove by a preponderance of the

evidence that Respondent willfully or wantonly failed to guard or warn against a dangerous condition, use, structure or activity. A willful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of the impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. *Ziarko v. Soo Line Railroad* (1994), 161 Ill. 2d 267, 641 N.E.2d 402, 204 Ill. Dec. 17.

Claimant has not met her burden of proof. The testimony of Claimant and her sister established there were some pebble sized rocks on the stairs. Their testimony also established there were approximately four to 12 pebble-sized rocks on the stair where Claimant fell. The testimony of Mr. Hedrick established that the stairs were 40 inches wide and 12 to 16 inches deep with handrails 36 inches high. The presence of four to 12 pebble sized rocks on a stair 40 inches wide and 12 to 16 inches deep with handrails 36 inches high does not, in and of itself, establish a dangerous condition. In fact, Claimant's sister and son safely descended the stair containing the same pebble sized rocks prior to Claimant's accident. Claimant's sister testified she did not use the handrails when she safely descended all of the stairs.

Even if the presence of the pebble sized rocks presented a dangerous condition, Claimant must prove Respondent knew of the presence of the pebble sized rocks on the stairs or recklessly or carelessly failed to discover their presence in order to prove Respondent willfully or wantonly failed to guard or warn against a dangerous condition. Claimant failed to prove Respondent knew of the presence of the pebble sized rocks on the stairs, or recklessly or carelessly failed to discover their presence. No

evidence was presented to show where the pebble sized rocks may have come from, how they arrived on the stairs, or how long they may have been on the stairs. No evidence was presented to show Respondent failed to adequately inspect or maintain the stairs. Also, no evidence was presented to show Respondent had any prior knowledge of any accidents being caused by the presence of pebble sized rocks on the stairs. While the Court is sympathetic with Claimant's plight, this claim must be denied due to Claimant's failure to prove Respondent willfully or wantonly failed to guard against or warn of a dangerous condition, use, structure, or activity as required by the Recreational Use of Land and Water Areas Act.

It is therefore ordered that this claim is denied.